Kyle McLean (SBN 330580)
Lisa R. Considine (*pro hac vice forthcoming*)
David J. DiSabato (*pro hac vice forthcoming*)
Leslie L. Pescia (*pro hac vice forthcoming*)
SIRI & GLIMSTAD
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967
kmclean@sirillp.com
lconsidine@sirillp.com
ddisabato@sirillp.com
lpescia@sirillp.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA MCADAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ESSEX MANAGEMENT CORPORATION,<br><br>Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Andrea McAdams ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Defendant Essex Management Corporation ("Essex" or "Defendant"), based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**INTRODUCTION**

1.      This case is about how Essex Management Corporation forces thousands of California tenants to pay inflated and unfair fees that make it even harder for families to afford housing in the State.

2.      Essex's business strategy has become increasingly more common, and it is a simple one – grow corporate profits by placing hidden and misleading charges, or "junk" fees, into rental agreements. Junk fees drive up prices and distort fair competition, which is especially damaging in the housing market. Consumers in California and across the country are seeing their daily living expenses increase due to hidden and inflated fees that are often not revealed until the final stages of a transaction. These fees also make it increasingly difficult for renters to evaluate their options for living because they cannot accurately compare the cost of renting when so many additional fees are included on top of the basic rent. Further, these fees are frequently disclosed so late (if at all) in the transaction that consumers have little choice but to accept them if they want to make sure they have a place to live. This practice leaves consumers with no realistic alternatives, forcing them to endure these deceptive and unfair fees.

3.      This practice is particularly problematic in the context of apartment rental leases, where tenants may not learn of the fees until shortly before they move-in, or even after they move-in, and often after they have already given notice to a prior landlord or invested significant moving expenses. With over 40% of renting households in the country — roughly 19 million households — paying over 30% of their income on housing costs, renters are facing increasing costs, and they rely on landlords and property management companies, like Essex, to be straightforward with them about the costs associated with the most basic necessity: housing.

4.     Here, Plaintiff asserts claims against Essex for charging her and other Essex tenants deceptive and unfair "junk" fees, including monthly "Insurance," "Service," and "Trash" fees (the "Disputed Fees").  These Disputed Fees total nearly $55 each month and provide no measurable value to Ms. McAdams or the tenants at properties managed by Essex.

5.     Rental junk fees are like a hidden tax on tenants who have no viable option of disputing or fighting these arbitrary fees and are forced to either continue paying them or move to a new space and risk facing the same problem elsewhere. The junk fees imposed by Essex do not offer additional benefits or services to tenants beyond the basic necessities for habitable living. Essex, as the entity responsible for ensuring tenants live in basic and habitable conditions, is already legally responsible for providing the "services" associated with these fees. In other words, these junk fees are not used to cover costs; they exist solely to boost Essex's profits and inflate its bottom line.

6.     Essex's junk fees have devastating consequences. They can unexpectedly increase renters' monthly expenditures beyond advertised rent costs, making rental housing even more unaffordable and undermining the financial stability of families across California. While a renter may be able to budget and plan for high rents if they know about them in advance, the addition of an array of mandatory fees for these ancillary services can unexpectedly push renters well beyond their means.

7.     The hidden nature of these fees also undermines fair competition. Prospective tenants cannot meaningfully compare prices for apartment rentals when significant portions of the monthly rent are disguised as add-on fees and are not disclosed up-front. This leads to tenants paying more than they otherwise would have for monthly rent, even when they cannot afford the difference in price.

8.     The Disputed Fees are hidden from tenants and never meaningfully disclosed as part of the advertised rent. Despite this, these fees are indeed part of the mandatory, monthly cost to stay in an Essex rental. Tenants are forced to accept these fees, imposed by Essex, if they are to rent from Essex.

9.     The fees are also inflated beyond the true cost of any services provided by Essex. The purpose of Essex's junk fees is to boost Essex's bottom line. While the fees may seem small to some, the collection of these fees month after month, year after year, from thousands of tenants, yields substantial profits for Essex.

10.    Finally, the Disputed Fees shift costs that Essex is already responsible for to the tenants, thereby violating public policy.  Essex is obligated to provide a habitable space for its tenants and by charging these Disputed Fees, Essex forces tenants to pay extra, beyond the advertised rental payments, for services that Essex must provide as a matter of law.

11.    Plaintiff McAdams rents and continues to rent an apartment at a property managed by Essex located in Garden Grove, California. Every month, Ms. McAdams is charged, in addition to her sewer, water, and gas, an "Insurance" fee of $14.39, a "Service" fee of $6.00 and a "Trash" fee of $36.60 in connection with her dwelling.

12.    Ms. Williams brings this lawsuit, individually and on behalf of similarly situated tenants in California and across the country, seeking to recover these unlawfully charged junk fees and for equitable relief to prevent Essex from continuing to profit from these unlawful fees. Specifically, Plaintiff challenges the following Disputed Fees: "Insurance" fee, the "Service" fee and the "Trash" fee. The Disputed Fees are not disclosed to tenants when Essex advertises the rental prices for its units in California or around the country. Further, these fees are deceptive because they are significantly greater than any actual costs to Essex associated with providing insurance, servicing tenants' accounts, or trash removal.

13.    The Disputed Fees are deceptive, unfair, and unconscionable in violation of the California Consumer Legal Remedies Act.  Additionally, by imposing such fees, Essex violates the covenant of good faith and fair dealing and has been unjustly enriched through its misconduct.

Plaintiff, on behalf of herself and the Class (defined below), seeks damages, restitution, and injunctive relief, as set forth below.

## **PARTIES**

14.    Plaintiff Andrea McAdams is, and at all times mentioned herein was, an individual citizen of the State of California and has been, throughout the applicable statute of limitations period, been living in an apartment managed by Essex. Since 2018, Ms. McAdams entered into a form lease agreement with Essex before she first moved into her apartment and continues to live at 12901 Dale Street, Apt. 25, Garden Grove, California (the "Premises"). Ms. McAdams has been charged and has paid the Disputed Fees throughout her tenancy at the Premises.

15.    Defendant Essex Management Corporation is a California corporation with its principal place of business located at 1100 Park Place, Suite 200, San Mateo, California. Essex manages numerous housing complex across California and Washington. As of December 2023, Essex owned and/or managed more than 60,000 apartment units. Essex is the 11th largest owner of apartments in the United States. Upon information and belief, Essex uses the same form Lease at the properties it manages nationwide.

## **JURISDICTION AND VENUE**

16.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different States. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

17.     This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §1965 (b) & (d) because Defendant is a citizen of this State, maintains minimum contacts within this State and intentionally avails itself of the laws of this State by conducting a substantial amount of business in Illinois. Defendant transacts business in this State, directs its activities at residents of this State, and the litigation results from injuries that arise out of or relate to those activities. Defendant operates, manages, and oversees numerous residential and commercial properties throughout California, including within this Court's jurisdiction.

18.     Venue is proper in this District under 28 U.S.C. §1391(a), (b), and (c) because the events that gave rise to the claims occurred in substantial part in this District and Defendant's principal place of business is located in this District. The affidavit required by Cal. Civ. Code § 1780(d) is attached as an exhibit to this Complaint.

## **FACTUAL ALLEGATIONS**

19.     Today, renters are faced with a confluence of housing hardships. Affordable housing is scarce, and rents have drastically increased over the past few years. A Credit Karma Study from 2022 showed that from "2017 to 2022, the average year-over-year increase in rent was 5.77% nationwide, with the biggest increase occurring from 2021 to 2022 at 14.07%."[1]

20.     A National Consume Law Center ("NCLC") study relying on data from the National Equity Atlas found that 68% of landlords imposed processing or administrative fees and nearly 60% imposed insurance fees. A participant in the study stated that administrative fees — the purposes of

---

[1] Jennifer Brozic & Andrew Depietro, *Average Rent Increase in the U.S. in 2022* (Oct. 20, 2022) available at: https://www.creditkarma.com/insights/i/average-rent-increase#average-rent-increase-over-the-years (last accessed September 24, 2024).

which are not always clear — can range from $12 to $25 with some one-time administrative fees reaching a reported $250 high in Minnesota. [2]

21.    One respondent to the Federal Trade Commission ("FTC" or "Commission") stated: "Junk fees have become fundamentally ridiculous, especially as these companies cannot even describe what the fee is for. In my monthly rent, I have a $34 service fee (that the . . . rental management company . . . has not been able to identify the reason for)"[3] Ultimately, the NCLC recommended that "the FTC investigate deceptive or unconscionable practices by corporate and large landlords that impose unavoidable and exploitative fees."[4]

22.    The FTC found these fees are not just ubiquitous in the rental field but also deceptive.[5] The Commission found that landlords and property management companies can deceive prospective tenants by misleading them about the true costs associated with renting the property, harming both consumers and businesses. Often, administrative fees are arbitrary and provide no value. Landlords are unable to explain the nature and purpose of fees.

23.    The Commission found the following:

Charges that misrepresent their nature and purpose are deceptive because they mislead reasonable consumers. False claims and those that lack a reasonable basis are inherently likely to mislead consumers. Further, the nature and purpose of charges are core characteristics that affect the value to consumers of the goods or services being offered. . .

it is unfair for businesses to misrepresent the nature and purpose of charges. ***Charging consumers under false pretenses causes substantial injury, including where the injury is a "small harm to a large number of people"*** . . . Where businesses obscure information about the nature and purpose of fees or provide false information to consumers, injury from the misrepresentations is not reasonably avoidable. Such practices have no countervailing benefits to

---

[2] Nat'l Equity Atlas, Rent Debt in America: Stabilizing Renters is Key to Equitable Recovery, available at: https://nationalequityatlas.org/rent-debt (last accessed September 24, 2024).
[3] 88 FR 77420, 77427 n. 91.
[4] 88 FR 77420, 77428 n. 97.
[5] 88 FR 77420, 77420.

consumers and competition—they simply make it more difficult for consumers to comparison shop and for truthful businesses to compete on price.[6]

24.    "All too often, Americans are plagued with unexpected and unnecessary fees they can't escape. These junk fees now cost Americans tens of billions of dollars per year—money that corporations are extracting from working families just because they can . . . The FTC's proposed rule to ban junk fees will save people money and time, and make our markets more fair and competitive," said FTC Chair Lina M. Khan.[7] HUD Secretary Marcia L. Fudge recognizes the impact of these hidden fees on consumers when trying to maintain their house, stating "I believe that every renter should know the true cost of finding and staying in their home and not be hit with hidden costs and junk fees."[8]

25.    Unpaid "junk fees" assessed by large property management companies can be reported to credit bureaus as rental debt, even after a tenant leaves the unit, which can lead to collection actions that can harm a tenant's credit score.

### Essex Charges Tenants Unlawful Junk Fees

26.    Essex engages in deceptive practices by obscuring the total cost of rent through a tactic known as "drip pricing." The advertised rent fails to include hidden mandatory fees. These essential costs are only revealed later in the application process, after potential tenants have already invested time and money in application fees and, potentially, even moving expenses. These sunk costs create a situation where tenants are more likely to overlook or accept these unexpected charges. Further compounding the deception, Essex buries the fee details in separate documents from the advertised monthly rent. This intentional separation makes it difficult for tenants to get an accurate picture of their true financial obligation.

---

[6] *Id.* at 77434–45.
[7] Federal Trade Commission (Oct. 11, 2023), *FTC Proposes Rule to Ban Junk Fees*. Available at: https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees (last accessed September 24, 2024).
[8] *Id.*

CLASS ACTION COMPLAINT - 8

27.     Essex is a prominent multi-family property manager in California and across the country, managing thousands of apartment complexes. Upon information and belief, Essex uses a standardized, one-size-fits-all adhesion lease that eliminates any room for negotiation and creates uncertainty for tenants as they can face unexpected increases in fees and changes in terms.[9]

28.     Irrespective of the particular Essex property in California, the Form Lease has substantively identical language and provisions in the body of the contract as well as in the incorporated form addenda, even with respect to key terms like the Disputed Fees.

29.     The Form Lease also has substantively identical provisions regarding rent, security deposits, landlord obligations and duties, tenant obligations, force majeure, and a host of other terms.

30.     As a result of this standardized language, Essex tenants are subject to essentially identical lease terms no matter the Essex property where they happen to reside.

31.     Similarly, Essex assesses and seeks to collect Insurance, Trash, and Service Fees in the same unlawful manner with respect to all of its California tenants.

32.     In that vein, Essex charges every tenant an Insurance Fee, in the amount of approximately $14.39 per month.

33.     Essex charges every tenant a Trash Fee, in the amount of approximately $36.80 per month.

34.     Essex charges every tenant a Utility Monthly Service Charge of approximately $6 in addition to charging the resident for the actual utilities.

35.     In the Form Lease, Essex states that reserves the right to "amend and update the terms" at any time "upon written notice."

---

[9] See McAdams Apartment Lease Contract, attached hereto as Exhibit A (the "Form Lease").

36.     The Disputed Fees are not disclosed until after the tenants have already spent hundreds of dollars on non-refundable fees to apply for and secure the unit. Ms. McAdams had to pay a $45 application fee when she first applied for tenancy at an Essex property and was unaware of the additional Disputed Fees at the time of application. Indeed, tenants are not informed of the Disputed Fees until they are presented with the Form Lease, which is well after they have expended considerable amounts to initiate the rental process, including non-refundable application fees.

37.     Even after initial disclosure, Essex continues to disclose the Disputed Fees separately from the monthly rent charge, despite their treatment of these fees as included in the total monthly rent due.

38.     Essex charges its tenants at the Premises, including Plaintiff, a monthly Insurance Fee of $14.39, a monthly "Service" fee of $6, and a "Trash" fee of $36.80. Tenants are charged these monthly add-on fees regardless of whether they need or use any services or whether any services are performed in a tenant's unit that month. With no avenue for avoiding these fees, tenants are forced to pay them.

39.     In fact, Essex specifically notes that its Master Insurance Policy does not even cover personal liability nor is it actually renter's insurance. Essex claims the monthly Insurance Fee represents administrative costs; thus, residents are paying an Insurance Fee and not being provided appropriate insurance coverage by Essex. Essex is essentially tacking on fees to residents' rent in order to pay for its own insurance with no benefit provided to the residents.

40.     The Form Lease also fails to explain what service is provided in exchange for the referenced Disputed Fee.  Nowhere does Essex detail what service, if any, these fees cover, leaving residents like Ms. McAdams wondering exactly what they are paying for and whether these fees are justified.

41.     Essex further charges its residents a monthly "Service" fee as additional rent that purportedly covers Essex's cost of providing utilities to the resident; however, Essex's explanation of what this charge actually covers is rife with ambiguity.[10] The cost of this fee unexplainably increased to $6.00 each month. The fee has now almost doubled, without explanation, from the $3.73 Service Fee charged to Ms. McAdams in 2022.

42.     Essex also charges Ms. McAdams a Trash Fee that is nowhere disclosed in the Lease Agreement provided by Essex. This Trash Fee is $36.80 per month, and there is no information or explanation about what additional services this astronomical Trash Fee covers or why this charge is so high.[11]

43.     Essex's deceptive practices regarding the additional fees for basic services that a manager is obligated to provide to tenants makes it impossible to know the true cost of renting an apartment.

44.     Defendant charges tenants, including Ms. McAdams, these Disputed Fees each month through its billing system. Plaintiff has been and continues to pay her bills, including the unfair Deceptive Fees.

**_California Law And Warranty Of Habitability_**

45.     In California, landlords and property managers have an obligation to provide a habitable living space under the implied warranty of habitability, which applies to single and multi-family units. _See Green v. Superior Court of San Francisco_, 517 P.2d 1168 (Cal. 1974). Under the implied warranty, "a residential landlord covenants that premises he leases for living quarters will be maintained in a habitable state for the duration of the lease." _Id._ at 1182.

---

[10] _See_ Exhibit A at p. 44.
[11] _See_ Exhibit A.

CLASS ACTION COMPLAINT - 11

46.     Under the warranty of habitability, property managers like Essex must keep common areas habitable. Essex presents fees as add-on "services" when they are, in fact, basic requirements that landlords and property managers must meet anyway. Tenants should not be deceived and misled into paying extra for what rent already covers.

47.     These charges deceptively and unfairly mislead consumers into believing that these costs are assessed for services they are provided in addition to the habitable dwelling places received in exchange for payment of their monthly rent.

***Essex Charges Plaintiff and Others Inflated and Ever-Increasing Junk Fees***

48.     Since approximately 2018, Plaintiff has leased her apartment located at 12901 Dale Street in Glendale Heights, California. Essex has been managing that property throughout the relevant period.

49.     Essex presented Ms. Williams with one of its Form Lease's. *See* Ex. A. That lease includes **80 pages** and was presented on a "take it or leave it" basis. Ms. McAdams' lease indicates that her rent is $2,640; however, Essex charges her significantly more than that each month.

50.     In addition to the rent payments and utilities, including her own gas for the hot water heater, Ms. McAdams made and continues to make each month, she pays the following monthly fees:

-   Insurance Fee - $14.39

-   Service Fee - $6

-   Trash - $36.80

51.     Ms. McAdams' monthly charge for hot water energy is approximately $27 a month, her charge for sewer is approximately $25 a month, and her charge for water is approximately $56 a month. These additional charges on top of the base rent compounded with the Disputed Fees charged each month make the monthly cost of living at Defendant's properties significantly higher than advertised.

52.     Ms. McAdams was assessed and has paid these Disputed Fees each and every month during her tenancy.

## CLASS DEFINITION AND ALLEGATIONS

53.     Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

54.     Plaintiff proposes the following Class and Subclass definitions, subject to amendment as appropriate:

> **Nationwide Class** (the "**Class**")
> All persons who, during the applicable statute of limitations lived in a property managed by Essex and were charged the Disputed Fees.

> **California State Subclass** (the "**California Subclass**")
> All individuals who, during the applicable statute of limitations, lived in a property in California managed by Essex and were charged the Disputed Fees.

55.     Excluded from the Class and Subclass are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

56.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class and Subclass before the Court determines whether certification is appropriate.

57.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class and Subclass are so numerous that the joinder of all members is impracticable. The precise number of Class and Subclass members is unknown to Plaintiff; however, Plaintiff believes that based on the number of units and tenants, that the proposed Class and Subclass contains thousands of individuals who have been damaged by Defendant's conduct as alleged herein, the identities of whom are within the knowledge of Defendant and can be easily determined through Defendant's records.

58.   **Predominancy of Common Questions of Law and Fact:**   This action involves questions of law and fact common to the Class.  The common legal and factual questions include, but are not limited to, the following:

    a.   Whether Defendant's assessment of the Disputed Fees within the applicable statute of limitations was unfair, deceptive, or misleading;

    b.   Whether Defendant was unjustly enriched as a result of charging Plaintiff and the Class and Subclass the Disputed Fees;

    c.   Whether the Disputed Fees should have been disclosed prior to the presentation of the Form Lease;

    d.   Whether Defendant's conduct, as alleged herein, constitutes a violation of California's Consumer Legal Remedies Act;

    e.   The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

    f.   Whether Plaintiff and the Class and Subclass are entitled to declaratory and injunctive relief and the nature of that relief.

59.   **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and the Class each entered into a Form Lease with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Insurance, Service, and/or Trash fees. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclasses and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class or Subclass, and Defendant has no defenses unique to Plaintiff.

60.   **Typicality:** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff, and the Class Members, each leased a rental property from Defendant and sustained damages arising from Defendant's wrongful conduct, as alleged herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes. Plaintiff and all members of the putative Classes have been similarly affected by Defendant's common course of conduct alleged herein.

Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive and unlawful practices related to the Disputed Fees

61.    **Appropriateness**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or Subclass, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

62.    Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class and Subclass, and other equitable relief on grounds generally applicable to the entire Class and Subclass. Unless a Class and Subclass are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class and Subclass will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these violations, and the members of the Class and Subclass and the general public will have to accept being unfairly treated.

**<ins>COUNT I</ins>**
**BREACH OF CONTRACT AND IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiff and the Class and Subclass)**

63.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–62 as if fully set forth herein.

64.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

65.     Plaintiff and each member of the Class have entered into a Form Lease with Defendant for rental of residential units.

66.     Additionally, a covenant of good faith and fair dealing is implied in Plaintiff and the Class members' Form Leases with Defendant. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit — not merely the letter — of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

67.     The material terms of the Form Lease therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff and the Class members' rights and benefits under the contract.

68.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of

the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

69.     Essex breached the covenant of good faith and fair dealing in the Form Lease through its policies and practices as alleged herein. Specifically, Essex breached its duties under the Form Lease by overcharging for Insurance, Service, and Trash Fees and improperly shirked its responsibilities under the warranty of habitability by charging for basic necessities that are included in the rent.

70.     Defendant's actions to maximize its revenue from these Disputed Fees impedes the right of Plaintiff and other members of the Class to receive what that they reasonably expected to receive in exchange for their rent.

71.     On information and belief, Defendant's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Defendant's revenue from Disputed Fees at the expense of their tenants, in contravention of Plaintiff's and the Class members' reasonable expectations.

72.     Plaintiff and members of the Class have sustained damages as a result of Defendant's conduct as alleged herein.

73.     As a result of Defendant's breach of the Account Agreement, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## COUNT II
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class and Subclass)
### *(Plead in the alternative to Count I)*

74.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–62 as if fully set forth herein.

CLASS ACTION COMPLAINT - 17

75.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

76.     Plaintiff and the members of the Class conferred a benefit on Defendant, which Defendant knew about, when they entered into the Form Lease agreements and were charged unreasonable and bogus Disputed Fees.

77.     Plaintiff and members of the Class were, and many continue to be, tenants at properties managed by Essex. They reasonably believed that Essex would not charge them undisclosed and unreasonable fees beyond their control. Plaintiff and members of the Class suffered financial losses when they were charged unreasonable Disputed Fees that were assessed on their accounts.

78.     By charging unreasonable Disputed Fees, Defendant unjustly enriched itself by taking a benefit, as outlined herein, from each of its tenants' accounts without providing any additional service or value to its tenants, including Plaintiff and members of the Class. Defendant has accepted and retained these benefits even though it failed to provide any service or product to its tenants beyond the basic necessities that Defendant was already required to provide as part of rent payments, many of which were unavoidable, making Defendant's retention of them unjust.

79.     By its wrongful acts and omission described herein, including charging fees for actions beyond the tenants' control, and for which tenants had no way of avoiding, Defendant was unjustly enriched at the expense of Plaintiff and the members of the Class.

80.     Plaintiff and the Class's detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

81.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative Class members. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

82.     Plaintiff and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

83.     Plaintiff and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

84.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

**COUNT III**
**Violation of California Consumer Legal Remedies Act**
**Cal. Civ. Code §§ 1750 *et seq.***
**(On behalf of Plaintiff and the California Subclass)**

85.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–62 as if fully set forth herein.

86.     Plaintiff brings this claim individually and on behalf of the hundreds of members of the California Subclass against Defendant.

87.     The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

88.     The CLRA specifically prohibits the "advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following: (i) taxes or fees imposed by a government on the transaction and (ii) postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code § 1770 (a)(29)(A).

89.     Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

CLASS ACTION COMPLAINT - 19

90.     Plaintiff and members of the Class are "consumers" as defined in Cal. Civ. Code §
1761(d).

91.     Plaintiff is a tenant of a property managed by Essex and was charged and paid for
Insurance, Service, and Trash fees each and every month that she has resided there.

92.     Defendant charged deceptive and unreasonable Insurance, Service, and Trash fees in the
regular course of its business and in the course of conducting trade and commerce and charged Plaintiff
these fees in the course of conducting trade and commerce. Defendant unilaterally imposed these fees
on Plaintiff and the members the California Subclass members and automatically charged their
accounts accordingly.

93.     Further, Defendant offered a price for rent that did not include all mandatory fees or
charges, in violation of Cal. Civ. Code § 1770 (a)(29)(A).

94.     There was nothing members of the California Subclass could do to avoid incurring these
deceptive and predatory fees. There is no justification for imposing these fees during the applicable
statute of limitations, which provided no service or product to its tenants, including Plaintiff and the
members the California Subclass, Defendant engaged in unfair business practice in violation of the
CLRA.

95.     Essex's practice of charging the unreasonable Disputed Fees is deceptive because it
preys on tenants' reasonable expectations that basic necessities are to be included in their rent. These
services are essential for habitable living conditions. Charging tenants for these essential services is
deceptive and unfair.

96.     In addition, these fees unfairly burden tenants because they are unavoidable. Tenants
have no control over the need for trash removal or insurance. These are essential services for
maintaining a habitable environment, and tenants cannot escape the responsibility of these fees.

Further, tenants cannot avoid paying at least some sort of fee when making payments on their account, which forces tenants to pay for services they have no choice but to receive.

97.     Plaintiff and all California Subclass members sustained ascertainable loss as a result of Defendant's unfair practices, as outlined herein.

98.     Plaintiff, on behalf of himself and the Class, seeks an order enjoining Defendant's unfair acts or practices under Cal. Civ. Code § 1780(a)(2). Specifically, Plaintiff asks the Court to order Defendant to (1) immediately cease charging the Disputed Fees to its customers and (2) adopt systems and practices sufficient to disclose the true and total cost to consumers.

99.     Plaintiff, on behalf of himself and the California Subclass, seeks an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e).

100.    At this time, Plaintiff does not bring a claim for damages under the CLRA. Plaintiff reserves the right to amend this Complaint to add damages under the CLRA thirty days or longer after compliance with the notice requirements of Cal. Civ. Code § 1782(a), should Defendant fail to meet Plaintiff's demands. Plaintiff sent by Certified Mail, Return Receipt Requested, a notice to comply with said requirements on October 2, 2024.

**<u>COUNT IV</u>**
**Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 *et seq.***
**(On behalf of Plaintiff and the California Subclass)**

101.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-62 as if fully set forth herein.

102.    Plaintiff brings this claim individually and on behalf of the California Subclass.

103.    Defendant violated Section 17500 of the California Business and Professions Code.

104.    As alleged more fully above, Defendant has made and disseminated false and misleading statements of facts and omissions in its advertisements, publications and statements to

Plaintiff and the class members by presenting costs of rent without including all other mandatory fees that are required to be paid to Defendant.

105.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known, that these statements were inaccurate and misleading.

106.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff reasonably relied on the statements when entering into Lease Agreements with Defendant. Defendant's misrepresentations were a substantial factor in Plaintiff's decision to rent from Defendant.

107.     Class-wide reliance can be inferred because Defendant's misrepresentations were material in that they concerned the true price of the rentals.

108.     Defendant's misrepresentations were a substantial factor and proximate cause in damages to Plaintiff and members of the California Subclass.

109.     Plaintiff and members of the California Subclass were injured as a direct and proximate result of Defendant's conduct because they would not have rented from the Defendant if they had known the truth and/or they overpaid for the rentals because they believed all necessities to have been included in the represented rental cost.

**<u>COUNT V</u>**
**Violation of California's Unfair Competition Law Bus. & Prof. Code §§ 17200 *et seq.***
**(On behalf of Plaintiff and the California Subclass)**

110.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–62 as if fully set forth herein.

111.     Plaintiff brings this claim individually on behalf of herself and on behalf of the members of the California Subclass.

112.     California's Unfair Competition Law ("UCL") prohibits and provides civil remedies for unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to serve as the basis of an independently actionable unfair competition claim and sweeps within its scope acts and practices not specifically proscribed by any other law.

113.     Defendant's acts and omissions alleged herein, specifically Defendant's violations of the CLRA and FLA, constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of the UCL.

114.     Defendant's actions and omissions have violated, and continue to violate the "unlawful" prong of the UCL by promulgating misleading information about the true costs of rentals from Defendant, and doing so with the intent that consumers rely on that misleading information.

115.     As further alleged herein, Defendant's conduct also violates the "deceptive" prong of the UCL in that Defendant's representations that its rental costs were as presented, when in fact Defendant charged several undisclosed fees, were false and misleading.

116.     Defendant's material misrepresentations, omissions, and lack of disclosure are likely to mislead reasonable and potential consumers, along with the general public. These practices are inherently deceptive and mislead consumers.

117.     Plaintiff and the California Subclass relied upon Defendant's misrepresentations and omissions as set forth above.

118.     Defendant's misrepresentations and omissions are significant because a reasonable consumer would consider this information when making purchasing decisions. Plaintiff reasonably

relied upon this misleading information and would have acted differently if she had been presented with accurate details. Similarly, class-wide reliance can be inferred because Defendant's misrepresentations were material in that they concerned the price of the product.

119.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to its consumers.

120.    Defendant violated the "unfair" prong of the UCL by falsely representing that that the represented cost of its rentals was the full price of the rentals, and did not disclose the additional junk fees that would be imposed and required.

121.    Defendant's misrepresentations and omissions resulted in it realizing more money from Plaintiff and the members of the California Subclass than they rightfully deserved. This money is subject to restitution. As a direct consequence of Defendant's unfair, unlawful, and deceptive practices, Plaintiff and the members of the California Subclass suffered financial losses.

122.    Plaintiff and the members of the California Subclass were injured as a direct and proximate result of Defendant's conduct because they would not have rented from Defendant if they had known the truth, and/or they overpaid for the rentals because the rentals because they believed all necessities to have been included in the represented cost.

123.    The harm to Plaintiff and the members of the California Subclass greatly outweighs the public utility of Defendant's conduct.  False statements in connection with the leasing of residential real estate harms consumers and injures competition. There is no public utility to misrepresenting the full cost of a rental apartment. This injury was not outweighed by any countervailing benefits to consumers or competition.

124.    Plaintiff and the California Subclass could not have reasonably avoided the injury caused by Defendant.

125.    Without an injunction, Defendant will continue to harm Plaintiff, the members of the California Subclass, and prospective consumers. Defendant's misrepresentations and omissions are ongoing, and even if they were to stop temporarily, there is a risk of it repeating these deceptive practices.

126.    Plaintiff, on behalf of herself and all members of the California Subclass, seeks public injunctive relief under the UCL to safeguard the general public from Defendant's deceptive advertising and misleading omissions.

127.    Defendant's actions have caused substantial harm to Plaintiff, the California Subclass, and the public. These practices are ongoing and are likely to continue unless stopped.

128.    Therefore, Plaintiff seeks a permanent injunction to prevent Defendant from engaging in such unlawful, unfair, and fraudulent business practices. Additionally, Plaintiff seeks restitution for the California Subclass in an amount to be determined at trial, as well as attorney fees and costs under Cal. Code Civ. Proc. § 1021.5. Further Plaintiff, on behalf of the members of the California Subclass, requests that she be awarded all relief as may be available by law, pursuant to Cal. Bus. Prof. Code § 17203.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class and Subclass, prays for an Order as follows:

A.    Finding this action satisfies the prerequisites for maintenance as a class action set forth, and certifying the Class and Subclass as defined herein;

B.    Designating and appointing Plaintiff McAdams as the representative of the Class and California Subclass;

C.    Declaring that Defendant's conduct violated the CLRA;

D.    Finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

E.    Awarding compensatory damages in amounts to be determined by the Court and/or jury;

CLASS ACTION COMPLAINT - 25

F.       Awarding prejudgment interest on all amounts awarded;

G.       For injunctive relief as pleaded or as the Court may deem proper;

H.       For restitution and all other forms of equitable relief;

I.       Awarding Plaintiff and the Class and Subclass reasonable attorneys' fees and expenses and costs of suit;

J.       Awarding damages in an amount to be determined at trial; and

K.       For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all triable issues.

Dated: October 4, 2024                    Respectfully submitted,
                                          By: /s/

                                          Kyle McLean (SBN 330580)
                                          Lisa R. Considine (*pro hac vice forthcoming*)
                                          David J. DiSabato (*pro hac vice forthcoming*)
                                          Leslie L. Pescia (*pro hac vice forthcoming*)
                                          SIRI & GLIMSTAD
                                          700 S. Flower Street, Suite 1000
                                          Los Angeles, CA 90017
                                          Telephone: 212-532-1091
                                          Facsimile: 646-417-5967
                                          kmclean@sirillp.com
                                          lconsidine@sirillp.com
                                          ddisabato@sirillp.com
                                          lpescia@sirillp.com

                                          *Attorneys for Plaintiff and the Proposed Class*