SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MARK G. RACKERS, Cal Bar No. 254242
LISA YUN PRUITT, Cal Bar No. 280812
501 West Broadway, 18th Floor
San Diego, California 92101-3598
Telephone:    619.338.6500
Facsimile:    619.234.3815
E mail:      mrackers@sheppardmullin.com
           lpruitt@sheppardmullin.com

Attorneys for Defendant
ESSEX MANAGEMENT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA MCADAMS and MICHELLE SCHWIMMER, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>ESSEX MANAGEMENT CORPORATION,<br><br>              Defendant. | Case No. 4:24-cv-06975-YGR<br><br>**DEFENDANT ESSEX MANAGEMENT CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Assigned to: Hon. Yvonne Gonzalez Rogers, Courtroom 1 (4th Floor)<br><br>Date:     March 4, 2025<br>Time:     2:00 p.m.<br><br>Oakland Courthouse<br>1301 Clay Street<br>Oakland, California 94612<br><br>Complaint filed: October 4, 2024 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on March 4, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1, before the Honorable Yvonne Gonzalez Rogers of the above-entitled United States District Court, located at 1301 Clay Street, Oakland, California 94612, Defendant Essex Management Corporation ("Essex") will and hereby does move to dismiss Plaintiff Andrea McAdams and Michelle Schwimmer's (collectively, "Plaintiffs") First Amended Complaint ("FAC") and to strike nationwide class allegations.

This Motion is brought on the grounds that Plaintiffs' FAC fails to state a claim upon which relief may be granted. Plaintiffs' claims against Essex fail for the following reasons:

- Plaintiffs' claim for violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), fails because the CLRA does not apply to residential lease agreements as a matter of law. In fact, the Federal Trade Commission (FTC) just issued its final "junk fees" rule and *excluded* the rental housing industry from additional regulation. As Plaintiffs' CLRA/FTC claim and/or theory of liability permeates Plaintiffs' entire action, their FAC should be dismissed.

- Plaintiff McAdams' claims for violation of the CLRA, False Advertising Law, Bus. & Prof. Code §§ 17500 *et seq.*, and California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*, fail because they are time-barred. In addition, these claims fails as to both Plaintiffs because there were no misleading or false statements regarding the fees at issue.

- Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because the claim is contradicted by the express terms of Plaintiffs' leases with Essex.

- Plaintiffs' unjust enrichment claim fails because Plaintiffs have not alleged, and cannot allege, that their leases fail to cover the disputed fees at issue. Moreover, Plaintiffs have not adequately alleged how Essex was unjustly enriched, given that they received services in return for the disputed fees.

- Plaintiffs' unjust enrichment and breach of the implied covenant claims also fail because they acquiesced to the conduct of which they now complains. For over six years, McAdams knowingly and voluntarily agreed to pay the disputed fees in multiple leases and paid them without objection. Schwimmer also executed her lease, and paid the disputed fees, despite the lease disclosing them.

Plaintiffs' nationwide class allegations should also be stricken because they both reside in California, they both signed contracts in California, regarding rentals in California, and their claims are based solely on alleged violations of California laws. There are also material differences in state consumer protection statutes nationwide.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities filed herewith, the Request for Judicial Notice, the paper and pleadings on file in this action, and such other papers as may be submitted in connection with the Motion.

Dated: January 8, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____/s/Mark G. Rackers_____
MARK G. RACKERS
Attorneys for Defendant
ESSEX MANAGEMENT CORPORATION

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     PLAINTIFFS' ALLEGATIONS .........................................................................3

    A.    In 2018, McAdams Signed a Lease Agreeing to the Disputed Fees .........3

    B.    Schwimmer Signed A Lease Agreeing to the Disputed Fees....................4

    C.    Plaintiffs Filed Their Complaint After Signing Their Leases ...................4

III.    LEGAL STANDARD .........................................................................................4

IV.     PLAINTIFFS' CLAIMS AGAINST ESSEX SHOULD BE DISMISSED .........5

    A.    Plaintiffs' CLRA Claim Fails Because It Does Not Apply to Residential
       Leases ......................................................................................................5

       1.    The CLRA Explicitly Excludes Real Property Transactions .........5

       2.    Legislative History Supports the Case Law ...................................7

       3.    The FTC is in Agreement ..............................................................8

    B.    Plaintiffs' CLRA, FAL, and UCL Claims Fail For Numerous Reasons ...................9

       1.    McAdams' CLRA, FAL and UCL Claims Are Time-Barred.........9

       2.    The Alleged Advertisement Is Not Unlawful. ..............................10

       3.    The Alleged Advertisement Is Not Unfair ...................................10

       4.    The Alleged Advertisements Are Not Fraudulent or Misleading ...............11

          a.    Plaintiffs Fail to Allege Essex Had A Duty to Disclose the
             Disputed Fees ..................................................................11

          b.    The Alleged Advertisements Are Not Misleading ...........................11

          c.    Plaintiffs Fail to Meet the "Reasonable Consumer" Test ...............12

    C.    Plaintiffs' Breach of the Implied Covenant Claim Fails .........................13

    D.    Plaintiffs' Unjust Enrichment Claim Fails .............................................15

    E.    Plaintiffs Waived Their Common Law Claims ........................................16

V.      THE COURT SHOULD GRANT ESSEX'S MOTION TO STRIKE ...............17

VI.     CONCLUSION ................................................................................................18

-i-                                                   Case No. 24-cv-06975-YGR

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

<u>Cases</u>

4

*In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255 (W.D. Wash. 2023) .............................. 4, 17

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 4

6

*Astiana v. Hain Celestial Grp., Inc.*
    783 F.3d 753 (9th Cir. 2015) .............................................................................................. 15

7

*B3 Capital Venture, LLC v. Crystal Waterfalls, LLC (In re Crystal Waterfalls, LLC)*

8
    2017 U.S. Dist. LEXIS 174443 (C.D. Cal. Oct. 20, 2017) ................................................. 16

9

*Barber v. Ohana Military Cmtys., LLC*

10
    2015 U.S. Dist. LEXIS 62274 (D. Haw. May 12, 2015) ..................................................... 6

11

*Berkeley v. Wells Fargo Bank*
    2015 U.S. Dist. LEXIS 141947 (N.D. Cal. Oct. 19, 2015) ............................................... 14

12

*Berryman v. Merit Prop. Mgmt., Inc.*

13
    152 Cal. App. 4th 1544 (2007) .................................................................................... 10, 11

14

*Brazil v. U.S. Dept. of Navy*

15
    66 F.3d 193 (9th Cir. 1995) ............................................................................................... 4

16

*Camp v. Ohana Military Cmtys., LLC*
    2024 U.S. Dist. LEXIS 134706 (D. Haw. July 30, 2024) ................................................... 6

17

*Carma Developers (Calif.) v. Marathon Dev. Calif.*

18
    2 Cal. 4th 342 (1992) ...................................................................................................... 13

19

*Cornu v. Norton Community Apartments, L.P.*

20
    2009 Cal. App. Unpub. LEXIS 5556 (Cal. Ct. App. July 9, 2009).......................................6

21

*Davis v. HSBC Bank*
    691 F.3d 1152 (9th Cir. 2012) .................................................................................... 11, 12

22

*Doe v. Google LLC*

23
    2024 U.S. Dist. LEXIS 129037 (N.D. Cal. July 22, 2024) ................................................ 15

24

*Elias v. Hewlett-Packard Co.*

25
    903 F. Supp. 2d 843 (N.D. Cal. 2012) .............................................................................. 10

26

*Etminan v. Alphatec Spine, Inc.*
    2024 U.S. Dist. LEXIS 153070 (S.D. Cal. Aug. 23, 2024)................................................ 15

27

*Freeman v. United Dominion Realty Trust*

28
    2008 Cal. App. Unpub. LEXIS 3448 (Cal. Ct. App. April 25, 2008) .................................... 6

-ii-

Case No. 24-cv-06975-YGR

SMRH:4929-8678-5284.4    DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE FAC;
MEMORANDUM OF POINTS AND AUTHORITIES

*Gould v. Corinthian Colls., Inc.*
　　192 Cal. App. 4th 1176 (2011) ..................................................................................... 16

*Guebara v. Allstate Ins. Co.*
　　237 F.3d 987 (9th Cir. 2001) ....................................................................................... 16

*Hancock Oil Co. v. McClellan*
　　135 Cal. App. 2d 667 (1955) ....................................................................................... 16

*Hart v. Baca*
　　204 F.R.D. 456 (C.D. Cal. 2001) ................................................................................... 4

*Heckart v. A-1 Self Storage, Inc.*
　　243 Cal. App. 4th 525 (2015) ........................................................................................ 6

*Ingels v. Westwood One Broadcasting Services, Inc.*
　　129 Cal. App. 4th 1050 (2005) .................................................................................... 10

*Janda v. T-Mobile, USA, Inc.*
　　2009 U.S. Dist. LEXIS 24395 (N.D. Cal. Mar. 13, 2009) ..................................... 12, 14

*Kavanaugh v. W. Sonoma Cnty. Union High Sch. Dist.*
　　29 Cal. 4th 911 (2003) .................................................................................................. 7

*Lien Huynh v. Chase Manhattan Bank*
　　465 F.3d 992 (9th Cir. 2006) ......................................................................................... 9

*Martinez v. Countrywide Home Loans, Inc.*
　　2009 U.S. Dist. LEXIS 138842 (C.D. Cal. June 4, 2009) ............................................. 6

*Mazza v. Am. Honda Motor Co.*
　　666 F.3d 581 (9th Cir. 2012) ....................................................................................... 17

*McKelvey v. Boeing North American, Inc.*
　　74 Cal. App. 4th 151 (1999) .......................................................................................... 9

*Mendoza v. Procter & Gamble Co.*
　　707 F. Supp. 3d 932 (C.D. Cal. 2023) ......................................................................... 12

*Oceanside 84, Ltd. v. Fidelity Fed. Bank*
　　56 Cal. App. 4th 1441 (1997) ...................................................................................... 16

*Parducci v. Overland Sols.*
　　399 F. Supp. 3d 969 (N.D. Cal. 2019) ......................................................................... 16

*Pasadena Live, LLC v. City of Pasadena*
　　114 Cal. App. 4th 1089 (2004) .................................................................................... 13

*Powell v. Ohana Military Cmtys., LLC*
　　2024 U.S. Dist. LEXIS 149455 (D. Haw. Aug. 21, 2024) ............................................. 6

-iii-

Case No. 24-cv-06975-YGR

SMRH:4929-8678-5284.4    DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE FAC;
MEMORANDUM OF POINTS AND AUTHORITIES

*Schultheis v. Ocwen Loan Servicing, LLC*
    2019 U.S. Dist. LEXIS 242016 (C.D. Cal. Dec. 2, 2019)......................................16

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...................................................................11

*Sprewell v. Golden State Warriors*
    2001 U.S. App. LEXIS 20434 (9th Cir. Dec. 28, 2001) ..........................................14

*State ex rel. Morrisey v. Copper Beech Townhome Cmtys. Twenty-Six, LLC*
    239 W. Va. 741 (2017) ...............................................................................................6

*Ting v. AT&T*
    319 F.3d 1126 (9th Cir. 2003) .....................................................................................6

*Vasquez v. L.A. County*
    487 F.3d 1246 (9th Cir. 2007) .....................................................................................4

*In re Wal-Mart Stores, Inc.,* 505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................4

<u>Statutes</u>

Cal. Bus. & Prof. Code § 17208.........................................................................................9

California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* .................1

Civ. Code
    § 1754 ...........................................................................................................................5
    § 1761(a) .......................................................................................................................5
    § 1761(b) .......................................................................................................................5
    § 1770 ...........................................................................................................................5
    § 1770(a)(29) ................................................................................................................7
    § 1783 ...........................................................................................................................8

Code Civ. Proc. § 338 ........................................................................................................8

False Advertising Law, Bus. & Prof. Code §§ 17500 *et seq.*...........................................1

Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.* ........................................1

<u>Other Authorities</u>

Fed. R. Civ. P.
    12(f)...............................................................................................................................4
    23(b)(3)........................................................................................................................17

https://www.federalregister.gov/documents/2023/11/09/2023-24234/trade-regulation-rule-
    on-unfair-or-deceptive-fees .........................................................................................8

https://www.ftc.gov/system/files/ftc_gov/pdf/r207011_udf_rule_2024_final_0.pdf ....................2

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Andrea McAdams and Michelle Schwimmer's action—which is just one of a string of copycat class actions against landlords, all based on a fundamental misunderstanding of the law regarding what type of fees can be charged pursuant to a residential lease—should be dismissed.  Indeed, Defendant Essex Management Corporation ("Essex") highlighted the inherent problems in Plaintiffs' action in a prior motion to dismiss.  Rather than oppose that motion, Plaintiffs filed their First Amended Complaint ("FAC").

Plaintiffs' FAC now focuses on the charging of service and trash fees (which they define as "Disputed Fees"), but it fails to cure the key deficiencies in their original complaint.  Plaintiffs still contend that the Disputed Fees included in their residential lease agreements with Essex constitute "junk fees" in violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, ("CLRA"), False Advertising Law, Bus. & Prof. Code §§ 17500 *et seq.*, ("FAL"), and Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*, ("UCL").  They further claim that Essex breached the implied covenant of good faith and fair dealing ("implied covenant"), and was unjustly enriched, by charging the Disputed Fees.  Plaintiffs, however, do not point to any laws, statutes, or regulations that provide that charging these fees is unlawful.  Nor can they.  Instead, relying on recent changes to the CLRA that went into effect in July 2024, Plaintiffs claim that Essex misleadingly advertised the rental rate for their apartments.  But just as in their original complaint, Plaintiffs do not detail what advertisements they relied on or what those (allegedly) relied-on advertisements actually said.  At most, Plaintiffs vaguely allege that they viewed Essex's website, but misstate and misleadingly omit relevant information that is included on the website.  Undeterred, Plaintiffs again allege, in conclusory fashion, that Essex violated "the law" because it allegedly failed to disclose the Disputed Fees until Plaintiffs were ready to sign their leases.  Plaintiffs are once again mistaken and their claims fail as a matter of law.

First, Plaintiffs' CLRA claim fails because it does not apply to transactions involving real property, such as residential leases.  The CLRA only targets unfair or deceptive practices in the sale or lease of "*goods or services.*"  Courts throughout the Ninth Circuit and beyond, as well as

legislative history, are in agreement that an apartment rental is considered real property—*not* a good or service.  And despite Plaintiffs' references to various FTC "comments," the FTC recently issued its "junk fees" rule that specifically excluded the rental housing industry as a "covered good or service."[1]  Thus, Plaintiffs' CLRA claim, and all other claims based on alleged violations of the CLRA, fail and should be dismissed with prejudice.

Second, as to Plaintiff McAdams, her CLRA, FAL, and UCL claims are time-barred, as they rely on her assertion that Essex misleadingly advertised the rental rate by failing to disclose the Disputed Fees when she was looking for an apartment in 2018.  The three and four-year applicable statutes of limitations for these claims have long since expired, and these claims should be dismissed with prejudice as to McAdams.

Third, Plaintiffs' CLRA, FAL, and UCL claims also fail because Essex's alleged practices were not unlawful, unfair, or misleading.  Again, there is no legal prohibition against advertising a base rental price, there is no legal prohibition against charging the Disputed Fees, and Essex had no legally-recognized duty to disclose the Disputed Fees.  Moreover, contrary to what Plaintiffs contend, Essex's website clearly discloses potential utility costs, including trash services.  And the fees are listed in the lease agreements Plaintiffs signed.  Such transparency negates Plaintiffs' claims of deceptive practices and false advertising.

Fourth, Plaintiffs' breach of the implied covenant claim fails because, again, the lease agreements admittedly and explicitly detail the Disputed Fees, and Plaintiffs cannot pursue an implied covenant claim by complaining about terms they agreed to in their leases.

Fifth, Plaintiffs' unjust enrichment claim fails because there is an enforceable agreement (the leases) that govern the Disputed Fees.  California law does not support unjust enrichment claims when an enforceable contract covers the dispute.

Finally, Plaintiffs' implied covenant and unjust enrichment claims also fail under the waiver and voluntary payment doctrines.  By voluntarily paying the Disputed Fees (since 2018 in

---

[1] https://www.ftc.gov/system/files/ftc_gov/pdf/r207011_udf_rule_2024_final_0.pdf (*see* § 464.1 Definitions [limiting rule to "**short-term** lodging, including temporary sleeping accommodations at a hotel, motel, inn, short-term rental, vacation rental, or other place of lodging."])(emph. added).

1   McAdam's case) without objection and accepting convenient trash disposal and utility services at

2   their apartment complex, Plaintiffs have effectively acquiesced to the conduct they now contest.

3       All of Plaintiffs' claims fail as a matter of law and should be dismissed with prejudice.  In

4   addition, the Court should strike Plaintiffs' nationwide class claims because Plaintiffs are both

5   California residents, who contracted in California, their claims are all based on alleged violations

6   of California's consumer protection statutes, and there are material differences in such statutes

7   nationwide.

8                    **II.     PLAINTIFFS' ALLEGATIONS**

9   **A.    In 2018, McAdams Signed a Lease Agreeing to the Disputed Fees**

10      Essex owns and manages residential housing units.  FAC ¶ 17.  In 2018, McAdams alleges

11   she paid a $45 application fee when she first applied for tenancy at an Essex property.  *Id.* ¶¶ 15,

12   55.  During the application process, McAdams alleges she was presented with a lease that

13   informed her of various fees, including a trash and utility service fee.  *Id.* ¶¶ 58-59; RJN, Ex. I.

14   Thereafter, McAdams entered into the lease with Essex to rent an apartment unit.  *Id.* ¶¶ 15, 55.

15      The 2018 lease clearly indicated that McAdams would be "responsible for utilities set forth

16   in the Utilities Addendum[.]"  RJN, Ex. I at 5.  She agreed to pay a utilities service charge and

17   trash fees based on an allocation formula.  *Id.* at 41, 45.  This formula determines McAdams'

18   share of the allocated utilities, administrative fees, costs of providing the utilities in accordance

19   with state and local law, taxes, charges from the hauler for removing the trash and recycling,

20   porter services, etc.  *Id.*  McAdams agreed that this formula was "fair and reasonable."  *Id.*

21      McAdams has remained in the same unit since 2018, renewing her lease with Essex each

22   year.  FAC, ¶¶ 15, 55, Ex. A; RJN, Exs. I-N.  Most recently, in March 2024, McAdams entered

23   into a seventh standard form lease with Essex for a 12-month term, which once again included all

24   the same fees from her first lease.  FAC, Ex. A.  Consistent with her earlier agreements, McAdams

25   agreed to pay a utilities service charge of $6.00 for the services provided by Essex and/or the

26   billing provider.  *Id.* at 44.  Additionally, McAdams consented again to being billed for trash

27   services based on the same allocation formula as her previous leases.  *Id.* at 41.  She agreed that

28   "charges for Trash may include all costs incurred by Landlord relating to Trash, including, but not

-3-

1  limited to charges from the hauler for removing the trash and recycling, porter service, bulky item

2  removal, cleaning of the bins and deodorizing services, third party vendor contracts providing

3  services relating to trash and recycling as well as composting costs where required." *Id.*

4  **B.**    **<u>Schwimmer Signed A Lease Agreeing to the Disputed Fees</u>**

5         Schwimmer recently signed a lease in October 2024 to rent an Essex apartment unit in

6  Simi Valley, California.  FAC ¶ 61.  Schwimmer alleges she applied for the apartment based on

7  pricing that was advertised on Essex's website.  *Id.* ¶ 63.  She claims that, during the application

8  process, Essex disclosed that she had to pay the Disputed Fees.  *Id.* ¶ 42.  After being informed of

9  these fees, Schwimmer entered into the lease agreement with Essex to rent an apartment unit.  *Id.*

10  ¶ 61.  Like McAdams, Schwimmer agreed that she would be responsible for the costs of utilities,

11  including trash fees and a utilities service charge of $6.11.  FAC, Ex. B, at p. 41.

12  **C.**    **<u>Plaintiffs Filed Their Complaint After Signing Their Leases</u>**

13         Despite having explicitly agreed to being charged trash and utility service fees by signing

14  their lease agreements, Plaintiffs filed a nationwide class action against Essex, alleging that these

15  fees are unlawful, deceptive, and unfair because Essex failed to disclose the fees until they were

16  presented with the lease.  FAC ¶ 42.

17              **III.    LEGAL STANDARD**

18         Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss an action when a

19  plaintiff fails to state a claim upon which relief can be granted.  A complaint does not "suffice if it

20  tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S.

21  662, 678 (2009).  Plaintiffs must provide "more than labels and conclusions[.]"  *Brazil v. U.S.*

22  *Dept. of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).  Finally, a court can dismiss claims without

23  granting leave to amend if amending the complaint would be futile.  *See Vasquez v. L.A. County*,

24  487 F.3d 1246, 1258 (9th Cir. 2007).

25         Additionally, Fed. R. Civ. P. 12(f) authorizes courts "to strike from a pleading … any

26  redundant, immaterial, impertinent, or scandalous matter."  *See Hart v. Baca*, 204 F.R.D. 456, 457

27  (C.D. Cal. 2001).  Federal courts are empowered to strike class definitions at the pleading stage.

28  *See e.g.*, *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1271 (W.D. Wash. 2023) (striking

1   nationwide class definition); *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 615 (N.D. Cal.

2   2007) ("[Defendant] correctly cites [the Ninth Circuit] … for the proposition that class allegations

3   may be stricken at the pleading stage.").

4        **IV.    PLAINTIFFS' CLAIMS AGAINST ESSEX SHOULD BE DISMISSED**

5   **A.    <u>Plaintiffs' CLRA Claim Fails Because It Does Not Apply to Residential Leases</u>**

6        Plaintiffs' claims fail because the CLRA and FTC rules do not apply to residential lease

7   transactions.  Plaintiffs allege Essex engaged in unfair and deceptive acts that resulted in the lease

8   of their apartment unit.  Plaintiffs were evidently emboldened by recent changes to the CLRA in

9   July 2024, which updated the statute to address alleged "junk fees" or "drip pricing" in the sale or

10   leasing of goods and services—e.g., when a seller allegedly advertises one price for a product, but

11   then includes other costs or fees when the consumer is ready to purchase that product.  These

12   changes were contemporaneous with various comments by the FTC regarding "junk fees."  But

13   those changes to the CLRA and the FTC's rules on junk fees do not extend to landlord-tenant

14   relationships or the renting of residential housing.  Indeed, Plaintiffs do not cite to a single

15   provision in the CLRA or any FTC rules that would apply to this situation.  Nor can they.

16        1.    <u>The CLRA Explicitly Excludes Real Property Transactions</u>

17        The CLRA only applies to unfair or deceptive acts or practices "that results in the sale or

18   lease of goods or services[.]"  Civ. Code § 1770; *see also* Civ. Code § 1754 (noting the CLRA

19   shall not apply to the construction or sale of a residence or real property).  The term "goods" is

20   defined as "tangible chattels bought or leased for use primarily for personal, family, or household

21   purposes, including certificates or coupons exchangeable for these goods, and including goods

22   that, at the time of the sale or subsequently, are to be so affixed to real property as to become a

23   part of real property, whether or not they are severable from the real property."  Civ. Code

24   § 1761(a).  The term "services" means "work, labor, and services for other than a commercial or

25   business use, including services furnished in connection with the sale or repair of goods."  Civ.

26   Code § 1761(b).  Thus, under the plain language of the CLRA, an apartment unit is not a tangible

27   chattel or service; it is real property.

28

There is no authority applying the CLRA to rental agreements for residential housing.  To the contrary, numerous courts in the Ninth Circuit have found that residential leases are ***not*** transactions for goods or services.  For example, in *Camp v. Ohana Military Cmtys., LLC*, 2024 U.S. Dist. LEXIS 134706 (D. Haw. July 30, 2024), the court emphasized that the "fundamental nature of a rental agreement is to lease a residence," not to purchase a service.  *Id.* at *25.  The *Camp* court concurred with two California Court of Appeal cases, including *Freeman v. United Dominion Realty Trust*, 2008 Cal. App. Unpub. LEXIS 3448 (Cal. Ct. App. April 25, 2008), as modified (May 6, 2008), which determined that services provided by the landlord as part of a lease did not qualify the plaintiff as a "consumer" eligible to sue under the CLRA, and *Heckart v. A-1 Self Storage, Inc.*, 243 Cal. App. 4th 525, 537 (2015), *superseded*, which asserted that a "Rental Agreement was for the lease of real property, which is not a 'good' or 'service.'"  *Id.*

Numerous other courts have come to similar conclusions.  *See, e.g.*, *Barber v. Ohana Military Cmtys., LLC*, 2015 U.S. Dist. LEXIS 62274, at *10–13 (D. Haw. May 12, 2015) (concluding residential leases are not transactions for goods or services); *Powell v. Ohana Military Cmtys., LLC*, 2024 U.S. Dist. LEXIS 149455, at *12–14 (D. Haw. Aug. 21, 2024) (agreeing with *Freeman* and finding that the plaintiff's agreement to lease a residence was not a purchase of services); *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) ("The CLRA is also inapplicable to rental agreements."); *Martinez v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 138842, at *11 (C.D. Cal. June 4, 2009) ("transactions involving the sale of real property do not qualify as goods or services" under the CLRA); *Cornu v. Norton Community Apartments, L.P.*, 2009 Cal. App. Unpub. LEXIS 5556, *16 (Cal. Ct. App. July 9, 2009) ("an apartment . . . is not a 'good' as that term is defined in the CLRA");  *State ex rel. Morrisey v. Copper Beech Townhome Cmtys. Twenty-Six, LLC*, 239 W. Va. 741, 748 (2017) ("a residential lease of real property … is not 'a lease of goods.'; "a number of states … have determined that their consumer credit protection statutes are not applicable to residential leases").  In short, courts throughout the Ninth Circuit (and beyond) are in agreement that residential lease transactions do not constitute the sale or lease of good and services.  Accordingly, the CLRA does not apply to this dispute.

1      2.    <u>Legislative History Supports the Case Law</u>

2      Not only are courts in agreement, but the California Legislature has made it clear that it

3  also understands that the CLRA does not extend to the landlord-tenant space, which is governed

4  by a comprehensive set of other provisions in the Civil Code.  "[W]hen interpreting a statute we

5  must discover the intent of the Legislature to give effect to its purpose, being careful to give the

6  statute's words their plain, commonsense meaning." *Kavanaugh v. W. Sonoma Cnty. Union High*

7  *Sch. Dist.*, 29 Cal. 4th 911, 919 (2003).  "If the language of the statute is not ambiguous, the plain

8  meaning controls and resort to extrinsic sources to determine the Legislature's intent is

9  unnecessary." *Id.*  Here, the plain language of the CLRA and a commonsense reading of the

10  CLRA make clear that it only applies to tangible chattels or services, not real property such as

11  apartment units.  Nonetheless, if the Court finds that another interpretation of the CLRA is equally

12  plausible, the Court should look to the Legislature's intent and the "the whole system of law of

13  which it is a part so that all may be harmonized and have effect." *Id.*

14      For example, on February 15, 2023, California Senator Caroline Menjivar, D-Van Nuys,

15  introduced legislation known as SB 611, which would have added a new Civil Code provision that

16  required landlords to disclose all additional fees for renting an apartment in their advertisements.

17  *See* RJN, Exs. A-B.  This provision, however, faced opposition and was subsequently removed

18  through a later amendment.  *Id.*  Regardless of whether this bill passed (and it did not), the

19  **introduction** of the bill to address the same issue raised by Plaintiffs in their FAC underscores the

20  California Legislature's acknowledgment that the CLRA does not apply to residential

21  leases.  Otherwise, Senator Menjivar would not have felt the need to introduce SB 611.  Moreover,

22  the Legislature could have added "real property" or "residential housing" to the amendments to the

23  CLRA that went into effect on July 1, 2024.  It did not.  *See* Civ. Code § 1770(a)(29).  The

24  Legislature knows how to broaden the scope of statutes, and it clearly chose not to do so here.

25      Indeed, this only makes sense in the context of residential apartments.  Fees, such as utility

26  and trash fees, could never be advertised at a set amount because they often fluctuate based on

27

28

usage and/or changes in pricing by local municipalities, which is beyond a landlord's control.[2]  In fact, such considerations were provided when the Legislature ultimately voted down SB 611. RJN, Ex. A.  Plaintiffs cannot unilaterally revive it here in their lawsuit.

### 3.     The FTC is in Agreement

Furthermore, the FTC is in agreement that its rules relating to junk fees do not apply to rental housing.  In their FAC, Plaintiffs mischaracterize the FTC's findings, citing only unsworn comments from "respondents" and statements made during the FTC's notice of *proposed* rulemaking and request for public comment.  Notably, Plaintiffs contend that the "FTC found these fees are not just ubiquitous in the rental field but also deceptive" and proceed to quote a passage from the supplementary section.  *See* FAC ¶¶ 24-25.  But that quoted section says nothing about rental housing and, indeed, much of the language regarding "rentals" in the proposed rule focused on short term rentals (e.g., hotels, vacation rentals), car rentals, and fees associated with purchasing tickets.  *See* https://www.federalregister.gov/documents/2023/11/09/2023-24234/trade-regulation-rule-on-unfair-or-deceptive-fees (cited in FAC as fns. 4-6).  Plaintiffs' reliance on anecdotal and unsworn comments does not substantiate their particular claims of alleged deception.  Moreover, when the FTC issued its final rule, it explicitly excluded rental housing as a "covered good or service," meaning its rule on "junk fees" does not apply to Essex or the Disputed Fees in this case.  The fact that the FTC considered these public comments and subsequently rejected them in the final rule demonstrates that fees in the rental housing space are not inherently misleading or unfair or, at the very least, that landlords are sufficiently regulated by existing law.  And again, there is no existing law outlawing the conduct Plaintiffs complain of here.

Accordingly, because an apartment unit is not a good or service under any law, rule, or regulation, Plaintiffs' third cause of action for violation of the CLRA and any cause of action dependent on the CLRA and the FTC's rules should be dismissed with prejudice.

---

[2] In the City of Garden Grove, where McAdams's complex is located, solid waste charges alone currently amount to $28.57.  *See* RJN, Ex. F.  There is also an extra charge for organic waste collection at a multi-family residence and separate recycling fees.  *See* RJN, Ex. G.  The City of Simi Valley, where Schwimmer's complex is located, also charges for solid waste, recycling and organic waste services.  *See* RJN, Ex. H.

1  **B.**    **Plaintiffs' CLRA, FAL, and UCL Claims Fail For Numerous Reasons**

2       1.    McAdams' CLRA, FAL and UCL Claims Are Time-Barred

3       McAdams' CLRA, FAL, and UCL claims should be dismissed because they are all are

4  time-barred.  CLRA and FAL are subject to a three-year statute of limitations (*see* Civ. Code

5  § 1783; Code Civ. Proc. § 338) and UCL claims are subject to a four-year statute of limitations

6  (Cal. Bus. & Prof. Code § 17208).  Where the facts and dates alleged in the complaint indicate the

7  claim is indisputably time-barred, a motion to dismiss should be granted without leave to

8  amend.  *See Lien Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

9       Here, McAdams' CLRA, FAL, and UCL claims are based on her allegation that Essex

10  advertised a rental price that did not include the Disputed Fees.  *See* FAC ¶¶ 33-34.  McAdams

11  claims that the fees are only revealed during the application process, after potential tenants have

12  already invested time and money in application fees.  *Id.*  ¶ 29.  McAdams claims she was

13  unaware of the Disputed Fees at the time of applying but was informed of the fees when she was

14  presented with the lease.  *Id.* ¶ 42.  But McAdams admits she applied for, and moved into, her

15  apartment in 2018 after seeing Essex's pricing online.  FAC ¶¶ 15, 55, 57.  The application fee

16  was only paid once, in 2018.  McAdams' claims are therefore time-barred.

17       McAdams vaguely contends that the statute of limitations should be tolled because Essex

18  somehow concealed the Disputed Fees, and she did not learn that the fees did not benefit her until

19  just prior to filing this action.  This argument is nonsensical.  A "plaintiff whose complaint shows

20  on its face that his claim would be barred without the benefit of the discovery rule must

21  specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have

22  made earlier discovery despite reasonable diligence.  The burden is on the plaintiff to show

23  diligence and conclusory allegations will not withstand demurrer."  *McKelvey v. Boeing North*

24  *American, Inc.*, 74 Cal. App. 4th 151, 160 (1999) (superseded on other grounds).

25       McAdams admits that she became aware of the Disputed Fees during the application

26  process in 2018.  All of her leases clearly explain what the Disputed Fees entail.  This undermines

27  her claim of concealment and demonstrates a lack of diligence on her part.  McAdams should have

28  discovered the facts essential to her claims in 2018.  There was nothing preventing her from

-9-

investigating whether she received the trash and utility services outlined in her lease. Therefore,

equitable tolling does not apply in this case. McAdams' claims under the CLRA, FAL, and UCL

are clearly time-barred and must be dismissed with prejudice.

2.      The Alleged Advertisement Is Not Unlawful.

Plaintiffs' CLRA, FAL, and UCL claims also fail because—even assuming Plaintiffs'

allegations are true—there is nothing unlawful about advertising a base rental price or charging the

Disputed Fees. There is no law stating prohibiting such practices. The CLRA and the FTC rule

on junk fees do not apply to residential leasing. In fact, Plaintiffs have not identified any law,

rule, or regulation that bars Essex from charging a fee for the services it provided to Plaintiffs.

At most, Plaintiffs contend that Essex was "legally responsible" for providing trash and

utility services. FAC ¶ 5. But they fail to cite any statute or case law that obligates Essex to

provide these services for free. Furthermore, they do not reference "any statutory or case law that

requires a for-profit business to point to a statute or contract that allows it to charge a fee for a

service." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1555 (2007). The burden

is on Plaintiffs to demonstrate why Essex was *not* permitted to charge these fees. *See id.* Because

they cannot, their allegations fail to support a violation of the CLRA, FAL, and the UCL's

unlawful prong. *See, e.g.*, *Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th

1050, 1060 (2005) (where the underlying or "borrowed" claim fails, so too does the UCL claim).

3.      The Alleged Advertisement Is Not Unfair

Plaintiffs also fail to allege a violation of the UCL's unfair prong. A business practice is

only unfair "if it violates established public policy or if it is immoral, unethical, oppressive or

unscrupulous and causes injury to consumers which outweighs its benefits." *Elias v. Hewlett-*

*Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012). In their FAC, Plaintiffs generally allege

that the FTC has found "junk fees" to be deceptive, provide no value to tenants, and landlords are

unable to explain the nature and purpose of the fees. FAC ¶¶ 23-26. Not only has the FTC since

determined that rental housing is exempt from its junk fee rule, but Plaintiffs fail to articulate why

Essex's rental advertising and charging of fees is unfair. First, Plaintiffs again fail to actually

include, or even describe, the advertisement they allegedly relied on. Plaintiffs likely omit these

-10-

Case No. 24-cv-06975-YGR

SMRH:4929-8678-5284.4    DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE FAC;
MEMORANDUM OF POINTS AND AUTHORITIES

advertisements because the fact is Essex informs tenants about estimated utility and trash costs on

its website.  *See* RJN, Ex. E; *see also* FAC, fns. 10-12.[3]  Essex also articulates the nature and

purpose of the utility service fee of $6.00/$6.11 in its leases.  FAC, Exs. A-B.  Essex also provides

detailed information about how trash fees are allocated.  *Id.*  Moreover, the trash fees are

consistent with the fees that are charged by Plaintiffs' respective cities—i.e., they have a clear

purpose.  *See* fn. 2 (citing RJN, Exs. F-H).

Finally, Plaintiffs' claim is undermined by McAdams' agreement to seven leases, which

included the Disputed Fees, over a period of six years.  Clearly the Disputed Fees are not so unfair

as to dissuade one of the named plaintiffs from continuing to live at an Essex property for years.

Plaintiffs have not pled, and cannot plead, that Essex engaged in an unfair business practice.

### 4.    The Alleged Advertisements Are Not Fraudulent or Misleading

#### a.    *Plaintiffs Fail to Allege Essex Had A Duty to Disclose the Disputed Fees*

With respect to the fraud prong of the UCL, Plaintiffs fail to allege that Essex had a duty to

disclose the Disputed Fees on its website.  *See In re Sony Grand WEGA KDF-E A10/A20 Series

Rear Projection HDTV TV Litig.,* 758 F. Supp. 2d 1077, 1092 (S.D. Cal. 2010) ("A plaintiff

alleging that the defendant failed to disclose material facts must, however, establish that the

defendant had a duty to disclose those facts."); *Berryman*, 152 Cal. App. 4th at 1557 ("Absent a

duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the

UCL.").  There is no law, rule, or regulation establishing any such duty.  In any event, Essex ***did***

disclose that tenants would incur separate monthly utility costs, including trash charges.  RJN, Ex.

E.  The fraud prong of the UCL should be dismissed for this reason alone.

#### b.    *The Alleged Advertisements Are Not Misleading*

Plaintiffs' claims, as alleged, also fail to rise to actionable CLRA, FAL, or UCL claims.  In

fact, courts have rejected similar claims regarding fees.  For example, in *Davis v. HSBC Bank*, 691

F.3d 1152 (9th Cir. 2012), the plaintiff applied for a credit card after seeing an advertisement in a

---

[3] Plaintiffs reference various webpages from Essex's website but have omitted the Frequently
Asked Questions.  This omission is not surprising, as that section details the estimated monthly
utility costs, including trash charges.  RJN, Ex. E.

1  newspaper and reviewing the program webpage, neither of which mentioned an annual fee.  *Id.* at

2  1158.  The plaintiff allegedly learned that there was an annual fee after receiving his credit card.

3  *Id.*  He filed a putative class action complaint against two defendants, alleging they advertised

4  credit cards without adequately disclosing the annual fee.  *Id.* at 1158–59.  The defendants filed a

5  motion to dismiss the plaintiff's FAL, UCL, and fraudulent concealment claims, which the district

6  court granted with prejudice.  *Id.* at 1159.  The Ninth Circuit affirmed, finding that no reasonable

7  consumer would be deceived into thinking there was no annual fee just because it was not

8  explicitly mentioned in the advertisement.  *Id.* at 1162; *see also Janda v. T-Mobile, USA, Inc.*,

9  2009 U.S. Dist. LEXIS 24395, *19–*21, *25 (N.D. Cal. Mar. 13, 2009) (although the plaintiffs

10  accused T-Mobile of engaging in a "bait and switch" by charging undisclosed fees that exceeded

11  advertised and agreed-upon rates, the court found the practices were not misleading because the

12  service agreements disclosed the potential for additional fees).

13      Similarly here, Essex's alleged practices were not misleading and do not constitute false

14  advertising.  On its website, Essex specifically indicates that the advertised prices are merely

15  "starting" prices.  *See* RJN, Ex. C-D.  Moreover, the website clarifies that "Monthly utility costs

16  include separate electricity, gas, water, sewer and trash charges . . . Average monthly utility bills

17  can vary based on two factors: the square footage breakdown of your apartment and the number of

18  people who live in your apartment . . . Monthly costs can range from $50 - $100 for electricity,

19  $20 -$35 for gas, $50 - $100 for water, trash and sewer, and $80 - $120 for Internet, cable and

20  streaming services."  RJN, Ex. E.  The lease also made it clear that Plaintiffs would be charged

21  additional fees.  FAC, Exs. A-B.  Plaintiffs had the option of signing the leases with the fees

22  disclosed, and they opted to sign them.  Thus, there is nothing deceptive or misleading about

23  Essex's business practices.  Plaintiffs' CLRA, FAL, and UCL claims fail on this basis as well.

24      *c.     Plaintiffs Fail to Meet the "Reasonable Consumer" Test*

25      In evaluating misrepresentation claims under the UCL, FAL, and CLRA, courts also look

26  to "whether a 'reasonable consumer' is likely to be deceived."  *Mendoza v. Procter & Gamble*

27  *Co.*, 707 F. Supp. 3d 932, 941 (C.D. Cal. 2023).  "To satisfy the reasonable consumer test, a

28  plaintiff must show 'a probability that a significant portion of the general consuming public or of

-12-

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE FAC;
MEMORANDUM OF POINTS AND AUTHORITIES

1  targeted consumers, acting reasonably in the circumstances, could be misled' by the

2  advertisement." *Id.*  On a motion to dismiss, "dismissal may be appropriate" where the

3  advertisement itself makes it impossible for the plaintiff to prove that a reasonable consumer was

4  likely to be deceived.  *Id.*

5       Plaintiffs have failed to satisfy the reasonable consumer test.  As explained above, Essex

6  does indeed disclose that tenants will be responsible for utility and trash fees.  *See* RJN, Exs. E, I-

7  N.  Further, Plaintiffs do not allege that enumerating utility service and trash fees in

8  advertisements is standard practice within the residential leasing industry or that it is standard

9  practice for landlords to include these fees in the base rent.  Consequently, Plaintiffs' allegations

10 fail to establish a reasonable expectation among consumers that such fees would be included in the

11 advertised base rent.  Thus, Plaintiff's CLRA, FAL, and UCL claims fail as a matter of law and

12 the Court should dismiss Plaintiffs' third, fourth, and fifth causes of action with prejudice.

13 **C.** **Plaintiffs' Breach of the Implied Covenant Claim Fails**

14      Plaintiffs' implied covenant claim is based on the same allegations underlying their other

15 claims.  They allege that Essex charged them unreasonable and undisclosed fees for utility service

16 and trash.  FAC ¶ 91.  They claim that these services were "basic necessities" that Essex was

17 required to provide as part of the base rent.  *Id.* ¶ 93.  Plaintiffs are again mistaken and fail to state

18 a viable breach of the implied covenant claim.

19      "The implied covenant of good faith and fair dealing is limited to assuring compliance

20 with the *express terms* of the contract and cannot be extended to create obligations not

21 contemplated by the contract."  *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089,

22 1094 (2004) (quoting 1 Witkin, Summary of Cal. Law (2003 supp.) Contracts § 743 at 449)

23 (emphasis in original).  The covenant of good faith and fair dealing cannot be read to prohibit a

24 party from doing that which is expressly permitted by an agreement, nor can the implied covenant

25 be used to add to or contradict the express terms of a contract.  *Carma Developers (Calif.) v.*

26 *Marathon Dev. Calif.*, 2 Cal. 4th 342, 374 (1992) (noting that "as a general matter, implied terms

27 should never be read to vary express terms").

28

1    Plaintiffs allege that Essex covenanted not to hinder their rights and benefits under the

2    lease agreements and that Essex charged them for services it was already required by law to

3    provide.  FAC ¶ 91.  But Plaintiffs fail to identify any specific law that requires landlords to pay

4    for trash and utility services.  No such laws exist.  Moreover, Plaintiffs' allegations are

5    contradicted by the express terms of the lease agreements, which are attached to the FAC.  *See*

6    *Sprewell v. Golden State Warriors*, 2001 U.S. App. LEXIS 20434, at *12 (9th Cir. Dec. 28, 2001)

7    ("The court need not, however, accept as true allegations that contradict matters properly subject

8    to judicial notice or by exhibit."); *Janda*, 2009 U.S. Dist. LEXIS 24395, at *31 (granting motion

9    to dismiss with prejudice where the plaintiffs alleged T-Mobile charged undisclosed fees "because

10   the contracts clearly stated that it would charge [Plaintiffs] a monthly fee, plus additional

11   charges.").

12   The leases explicitly outline the fees to be charged to Plaintiffs, including the utility

13   service fee ($6.00 for McAdams and $6.11 for Schwimmer) and trash fees (to be billed using the

14   allocation method, which Plaintiffs agreed was "fair and reasonable").  Ex. A at 41, 44, Ex. B at

15   39-40, 42; *compare* FAC ¶ 11-12 (noting McAdams was charged a utility service fee ($6.00) and

16   trash fees ($36.60); Schwimmer was charged a utility service fee ($6.11) and trash fee ($21.82)).

17   *See e.g.,* fn. 1.  Therefore, as a matter of law, Essex did not breach the implied covenant of good

18   faith and fair dealing when it charged fees expressly authorized by the parties' contracts.

19   Additionally, an "implied covenant claim requires the plaintiff to show that the conduct of

20   the defendant, whether or not it constitutes a breach of a consensual contract term, demonstrates a

21   failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad

22   judgment or negligence but by a conscious and deliberate act, which unfairly frustrates the agreed

23   common purposes and disappoints the reasonable expectations of the other party thereby depriving

24   that party of the benefits of the agreement."  *Berkeley v. Wells Fargo Bank*, 2015 U.S. Dist.

25   LEXIS 141947, at *27 (N.D. Cal. Oct. 19, 2015) (internal quotations omitted).  Plaintiffs have not

26   alleged that Essex deliberately interfered with their trash collection or cut off their utility services.

27   Moreover, McAdams' claim that Essex charged excessive fees is directly contradicted by the fact

28   that she acknowledged paying these fees for over six years and renewed her lease after moving

-14-

1    into her apartment unit in 2018.  *See* FAC ¶¶ 15, 55.  Accordingly, Plaintiffs' first cause of action

2    for breach of the implied covenant should be dismissed.

3    **D.    <u>Plaintiffs' Unjust Enrichment Claim Fails</u>**

4           Plaintiffs' claim for unjust enrichment is based on her allegation that Essex charged them

5    unreasonable fees without providing any additional service or value to Plaintiffs.  FAC ¶ 105.  In

6    California, a claim for unjust enrichment may be construed as a quasi-contract claim seeking

7    restitution.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015).  However,

8    "quasi-contract claims for restitution based on unjust enrichment cannot be asserted when there

9    are enforceable agreements covering the subject matter."  *Etminan v. Alphatec Spine, Inc.*, 2024

10   U.S. Dist. LEXIS 153070, at *7–*8 (S.D. Cal. Aug. 23, 2024).  "To avoid being precluded from

11   asserting a quasi-contract claim in the alternative under the theory of unjust enrichment, the

12   plaintiff must deny the existence of enforceable agreements in their quasi-contract claim or show

13   that the agreement does not govern the underlying subject matter."  *Id.*

14          Here, Plaintiffs have not adequately alleged a quasi-contract claim for restitution based on

15   unjust enrichment as an alternative to their implied covenant claim because they have not stated

16   that their leases fail to cover the Disputed Fees or denied the existence or enforceability of their

17   leases.  Indeed, Plaintiffs attached a copy of their leases to the FAC.  *See* FAC, Exs. A-B.

18   Therefore, Plaintiffs' unjust enrichment claim must be dismissed as a matter of law.

19          Additionally, Plaintiffs' unjust enrichment claim fails because they have not articulated

20   how Essex was enriched, let alone *unjustly* enriched, by the fees they paid.  To prevail on their

21   unjust enrichment claim, Plaintiffs must show that Essex "has been unjustly conferred a benefit

22   through mistake, fraud, coercion, or request."  *Astiana*, 783 F.3d at 762.  Plaintiffs vaguely claim

23   that Essex failed to disclose what services are provided as part of the utility service fee of

24   $6.00/$6.11.  FAC ¶ 46.  However, their leases explain that this service charge "represents the

25   reasonable value of services provided by Landlord and/or the Billing Provider to allocate utility

26   costs, provide billing to Resident, process payments and, where applicable, postage costs."  FAC,

27   Exs. A-B.  And again, Plaintiffs do not cite to any law that requires Essex to provide utility or

28

1  trash services to them as "part of rent payments;" nor do they assert that Essex failed to provide

2  utility and trash services.  Plaintiffs' unjust enrichment claim fails for this reason as well.

3        Plaintiffs' unjust enrichment claim also fails because they cannot state a claim against

4  Essex for any unlawful conduct.  *See Doe v. Google LLC*, 2024 U.S. Dist. LEXIS 129037, at *35–

5  *36 (N.D. Cal. July 22, 2024) (finding that "because the plaintiffs have not stated a claim against

6  Google for any unlawful conduct, they have also failed to state an unjust enrichment claim").  As

7  discussed above, there is nothing unlawful about charging residents fees for utility and trash

8  services.  Plaintiffs' second cause of action should be dismissed with prejudice.

9  **E.    Plaintiffs Waived Their Common Law Claims**

10        Finally, Plaintiffs' implied covenant and unjust enrichment claims should be dismissed

11  because they waived them.  Waiver is the "intentional relinquishment of a known right."  *Gould v.*

12  *Corinthian Colls., Inc.*, 192 Cal. App. 4th 1176, 1179 (2011).  The waiver may be "based on

13  conduct indicating an intent to relinquish the right."  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987,

14  996 (9th Cir. 2001).  "Acceptance of benefits under a lease is conduct that supports a finding of

15  waiver."  *Gould*, 192 Cal. App. 4th at 1179 (by accepting termination payments under a lease, the

16  plaintiff waived any defect in the defendant's performance of the termination provision);

17  *Oceanside 84*, *Ltd. v. Fidelity Fed. Bank*, 56 Cal. App. 4th 1441, 1443-51 (1997) (dismissing

18  borrower's claims that Fidelity improperly calculated changes in payments after finding the

19  borrower had acquiesced to Fidelity's consistent interpretation of the loan terms by making

20  payments without objection for several years); *B3 Capital Venture, LLC v. Crystal Waterfalls,*

21  *LLC (In re Crystal Waterfalls, LLC)*, 2017 U.S. Dist. LEXIS 174443, at *12–*19 (C.D. Cal. Oct.

22  20, 2017) (finding a lender waived its right to collect default interest under a loan agreement by

23  failing to claim it was owed default interest).

24        Similarly, under the voluntary payment doctrine, "[p]ayments voluntarily made, with

25  knowledge of the facts, cannot be recovered."  *Parducci v. Overland Sols.*, 399 F. Supp. 3d 969,

26  980 (N.D. Cal. 2019) (dismissing breach of contract claim under the voluntary payment doctrine

27  because the plaintiff continued to pay for and purchase insurance policies after discovering

28  purportedly excessive limits); *Schultheis v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS

1   242016, at *9 (C.D. Cal. Dec. 2, 2019) (dismissing breach of contract claim under the voluntary

2   payment doctrine because the plaintiff paid disputed property taxes with full knowledge of the

3   facts); *Hancock Oil Co. v. McClellan*, 135 Cal. App. 2d 667, 671-72 (1955) (holding that repeated

4   voluntary payments by the debtor precluded him from disputing the accuracy of invoice).

5       Here, Plaintiffs' voluntary monthly payments of the Disputed Fees—and in McAdams'

6   case, over six years—without any objection and with full knowledge of the facts, clearly waive

7   their claims against Essex regarding the Disputed Fees.  McAdams concedes that Essex disclosed

8   the Disputed Fees during the application process in 2018.  FAC ¶ 29.  Since 2018, McAdams

9   entered into seven 12-month leases with Essex with substantially the same terms for the same

10  apartment unit and agreed to pay the same Disputed Fees.  For over six years, she enjoyed the

11  convenience of trash disposal and utility services at her apartment complex.  *Id.*  For over six

12  years, she did not have to personally arrange for the City of Garden Grove to collect her trash,

13  recycling, and organic waste, nor did she have to manage her own sewer, water, or hot water

14  energy services.  *Id.*  Schwimmer also had knowledge of all of the relevant facts regarding the

15  Disputed Fees before she signed her lease and moved into her apartment.  Yet, she voluntarily paid

16  her rent and enjoyed the amenities at her complex.  FAC ¶ 11.

17      The consistent and unchallenged payment of the Disputed Fees, along with the acceptance

18  of services provided by Essex over a significant period, demonstrates Plaintiffs' acceptance of the

19  lease terms, including the Disputed Fees.  Such conduct indicates an intent by the Plaintiffs to

20  waive any disputes they had with the fees.  Plaintiffs' implied covenant and unjust enrichment

21  claims fail for this reason as well and should be dismissed.

22  **V.    THE COURT SHOULD GRANT ESSEX'S MOTION TO STRIKE**

23      The Court should strike Plaintiffs' nationwide class comprised of all persons who lived in

24  an Essex-managed property and were charged the Disputed Fees.  FAC ¶ 78.  Plaintiffs—two

25  California residents—bring two claims on behalf of the nationwide class for breach of the implied

26  covenant and unjust enrichment. These claims are predicated on Plaintiffs' argument that the

27  Disputed Fees were falsely advertised and are unlawful under the CLRA, UCL, and FAL.  *See*

28  FAC ¶¶ 91, 104.

A "court may strike class allegations if the plaintiff [can]not make a prima facie showing of Rule 23's prerequisites or that discovery measures [are] 'likely to produce persuasive information substantiating the class action allegations.'"  *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d at 1271; Fed. R. Civ. Pro. 23(b)(3).  Here, Plaintiffs cannot make a prima facie showing of Rule 23's predominance requirement because California's consumer protection statutes, on which Plaintiffs' common counts are based, may not be applied to a nationwide class.  *See e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 587-91 (9th Cir. 2012), *overruled on other grounds* (vacating certification of a nationwide class of consumers who brought claims under the CLRA, UCL, FAL, and unjust enrichment, because the material differences in states' consumer protection statutes "are not trivial or wholly immaterial").  Individualized inquiries will be required to determine whether Essex was unjustly enriched or breached the implied covenant by charging fees that are allegedly unlawful under the various states' consumer protection statutes. Thus, Plaintiffs will not be able to demonstrate predominance, even with the benefit of discovery.

Moreover, Plaintiffs' implied covenant claim hinges on the specific terms of each individual's contract, as they claim Essex failed to disclose the Disputed Fees and the services for which the fees are being charged.  However, Plaintiffs have not attached copies of the leases they claim are used nationwide, nor have they included the material terms of the leases they allege are used nationwide.  Certifying a nationwide class would impose significant manageability challenges due to the need to evaluate the specifics of each lease and the applicable state law. Thus, Plaintiffs' nationwide class claims should be stricken from the FAC.

## VI.    CONCLUSION

For these reasons, Essex requests this Court dismiss Plaintiffs' FAC with prejudice. Further, Essex requests the Court to strike Plaintiffs' nationwide class allegations.

Dated:  January 8, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____
        */s/ Mark G. Rackers*
            Attorneys for Defendant
     ESSEX MANAGEMENT CORPORATION