**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANDREA MCADAMS AND MICHELLE SCHWIMMER,** individually and on behalf of all others similar situated,<br><br>Plaintiffs,<br><br>v.<br><br>**ESSEX MANAGEMENT CORPORATION,**<br><br>Defendant. | Case No.: 4:24-cv-06975-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS;**<br><br>**GRANTING IN PART AND DENYING IN PART DEFENDANT'S REQUEST FOR JUDICIAL NOTICE;**<br><br>**DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 25, 26 |

Plaintiffs Andrea McAdams and Michelle Schwimmer bring a class action complaint against defendant Essex Management Corporation, asserting claims for breach of contract and implied covenant of good faith and fair dealing; unjust enrichment; and alleged violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA").  Defendant moves (i) to dismiss all five claims and requests judicial notice of several documents in support of its motion and (ii) to strike plaintiffs' nationwide class allegations. (Motion at Dkt. No. 25 and Defendant's Request for Judicial Notice ("RJN") Dkt. No. 26.)

Having carefully considered the pleading and papers submitted, and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss **WITH LEAVE TO AMEND**, and **GRANTS IN PART** and **DENIES IN PART** defendant's request for judicial notice. The Court **DENIES** the motion to strike plaintiffs' nationwide class allegations.[1]

**I.    BACKGROUND**

The First Amended Complaint ("FAC") alleges as follows:

Defendant Essex Management Corporation ("Essex") is a California corporation that owns and manages housing complexes across California and Washington. (Dkt. No. 22, FAC, ¶ 17.)

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.

1  Plaintiffs Andrea McAdams and Michelle Swimmer are California citizens who have rented Essex's apartments. (*Id.* ¶¶ 16–17.) McAdams signed a form lease agreement with Essex in 2018 for an apartment unit in Garden Grove, California. (*Id.*) Schwimmer signed a form lease agreement with Essex in October of 2024 for an apartment unit in Simi Valley, California. (*Id.*) Both McAdams and Schwimmer have continued to rent the same units at the time the lawsuit was filed. (*Id.*)

Every month, McAdams is charged—in addition to her rent, sewer, water, and gas fees—a "Service" fee of $3.73 and "Trash" fee of $36.60. (*Id.* ¶ 11.) Sometime after McAdams moved into her apartment, the $3.73 "Service" fee increased to $6.00 without explanation. (*Id.* ¶ 46.) Similarly, every month, Schwimmer is charged—in addition to her rent, sewer, water, and gas fees—a "Service" fee of $6.11 and "Trash Collection Reimbursement" fee of $21.82. (*Id.* ¶ 12.)

These service and trash fees (the "Disputed Fees") are deceptive and unfair "junk" fees that "provide no measurable value" to tenants and can total more than $40 each month. (*Id.* ¶ 4.) Essex's tenants are not informed of the Disputed Fees until after they "have already spent hundreds of dollars on non-refundable fees to apply for and secure a unit." (*Id.* ¶ 42.)

Plaintiffs, for example, chose to apply for Essex's properties "based on seeing Defendant's advertised pricing online." (*Id.* ¶¶ 57 & 63.) The existence of the Disputed Fees was only disclosed through plaintiffs' form leases, which ranged from sixty to eighty pages, were presented on a "take it or leave it" basis, and were only provided to plaintiffs after they had already paid $45 to initiate their applications. (*Id.* ¶¶ 42, 56 & 62.) The lease provisions disclosing the Disputed Fees do not specify the amount charged for "Trash", while their "explanation of what [the 'Service' fee] actually covers is rife with ambiguity." (*Id.* ¶¶ 45–46.)  As a result, "tenants like Plaintiffs have no choice but to either pay these fees or break their lease, be subject to additional fees imposed by these companies, and be left without a place to live." (*Id.* ¶ 28.)

Upon information and belief, "Essex uses the same form lease at the properties it manages nationwide." (*Id.* ¶ 17.) The form lease has "substantively identical provisions regarding rent, security deposits, landlord obligations and duties, tenant obligations, force majeure, and a host of other terms." (*Id.* ¶ 37.) Essex's tenants are thus subject to "essentially identical lease terms" no

2

matter where they reside. (*Id*. ¶ 38.) "Essex assesses and seeks to collect [the fees] in the same unlawful manner with respect to all of its California tenants." (*Id*. ¶ 39.)

"Any applicable statute of limitations should be tolled by Defendant's knowledge, active concealment, and denial of the facts alleged . . . , which is ongoing." (*Id.* ¶ 74.)

## II. LEGAL FRAMEWORK

### A. Judicial Notice

Courts may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

"Accordingly, a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. . . . [but] cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal citations omitted).

Facts that are undisputed but irrelevant to the resolution of the underlying matter are not judicially noticeable. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice of irrelevant documents); *see also Bernal-Gonzalez v. Barr*, 802 F.App'x 259, 262 n.1 (9th Cir. 2020) (same).

Similarly, the incorporation by reference "doctrine permits a district court to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

### B. Motion to Dismiss

In evaluating a motion to dismiss, the Court accepts factual allegations in a complaint as true and construes them in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).) Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. To prevail, defendants must show either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *See Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

For claims that sound in fraud, Rule 9(b) demands that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and citations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id*. (internal quotation marks and citations omitted). Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Id*. at 1125 (internal quotation marks and citations omitted).

C. **Motion to Strike**

Motions to strike are disfavored. *See Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014). This Court rarely grants them. At best, the purpose of a 12(f) motion to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks and citations omitted). Rule 12(f) "does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Id.* at 971. Whether to grant a motion to strike ultimately lies within the discretion of the district court. *See id.* at 973.

### III. REQUEST FOR JUDICIAL NOTICE

Defendant requests the Court incorporate by reference or take judicial notice of fourteen documents.

Six of those documents are lease agreements between plaintiffs and defendant. The parties agree that incorporation by reference is appropriate. The Court construes plaintiffs' lease agreements as incorporated by reference. (RJN, Ex. I–N.) The FAC references the agreements throughout, and their authenticity is unquestioned. *See In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d at 986.

The remaining eight documents fall into three main categories: the legislative history of SB 611, a recently enacted bill addressing junk fees in residential leases; defendant's own webpages containing floor plans and pricing information; and two California cities' webpages on waste rates and recycling practices. Defendant argues that the documents are judicially noticeable because they are matters in the public record. (RJN at 2.)

The Court takes judicial notice of the two documents concerning SB 611's legislative history, but not the facts therein. (RJN, Ex. A & B.) These documents are public records not subject to reasonable dispute.

The Court declines to take judicial notice of defendant's own webpages, (RJN, Ex. C–E.), and webpages of Garden Grove and Simi Valley's waste rates and recycling practices. (RJN, Ex. F–H.) The Court will not make factual determinations as the motion to dismiss stage. Defendant relies on myriad screenshots of webpages to make factual arguments. Plaintiffs do not allege that they relied upon defendant's webpages or statements within those webpages. Plaintiffs also do not allege that defendant's conduct is inconsistent with any of Garden Grove or Simi Valley's policies. Thus, judicially noticing the webpages would serve no purpose other than to "convert[ ] a motion to dismiss into a motion for summary judgment" by prematurely accepting defendant's version of the facts. *See Khoja*, 899 F.3d at 999.

Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** the request for judicial notice. The Court takes judicial notice of Exhibits A and B, construes Exhibits I through N as incorporated by reference, and declines to take judicial notice of Exhibits C through H.

**IV.    MOTION TO DISMISS**

    **A.    The California Statutory Claims**

Defendant moves to dismiss plaintiffs' CLRA, FAL, and UCL claims on myriad grounds. The Court addresses each.

        ***1.    Statute of Limitations***

As a threshold matter, defendant argues that McAdam's CLRA, FAL, and UCL claims are time-barred because the FAC alleges that "tenants are not informed of the Disputed Fees until they are presented with the Form Lease" and that McAdams entered into Essex's form lease agreement in 2018. (Dkt. No. 25 at 9 (citing FAC ¶ 42).)

Plaintiffs do not respond to this argument in their opposition brief,[2] but do allege in their FAC that "the statute of limitations should be tolled by Defendants' knowledge, active concealment, and denial of the facts alleged . . . , which is ongoing." (FAC ¶ 74.)

CLRA and FAL claims are subject to a three-year statute of limitations, Cal. Civ. Code § 1783 & Cal. Civ. Proc. Code § 338, while UCL claims are subject to a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208.

In California, the "delayed discovery rule" generally tolls the statute of limitations until the time that the plaintiff "discovered or had notice of all facts which are essential to the cause of action." *In re Conseco Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 2008 WL 4544441, *8 (N.D. Cal. Sept. 30, 2008) (citing *Saliter v. Pierce Bros. Mortuaries*, 81 Cal.App.3d 292, 297 (1978)). "In order to invoke [a delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* "[M]ere conclusory assertions that delay in discovery was reasonable are insufficient." *Id.*

Here, plaintiffs' allegations are too conclusory to delay the applicable statute of limitations. The FAC does not allege the time and manner of McAdams' discovery of the Disputed Fees.

---

[2] The topic is referenced in the table of contents but was not contained in the brief. *See* Dkt. No. 29 at i.

1  Moreover, plaintiffs' failure to oppose defendant's statute of limitations argument is, itself, grounds for dismissal. *See Moore v. Apple, Inc.*, 73 F.Supp.3d 1191, 1205 (N.D. Cal. 2014) (holding plaintiff's failure to oppose a motion to dismiss a particular claim as an abandonment of that claim).

Therefore, to the extent the motion isn't other otherwise granted without leave to amend, the Court **GRANTS** defendant's motion to dismiss **WITH LEAVE TO AMEND**.

### 2.   *Plaintiffs' CLRA Claim*

Defendant argues that plaintiffs' CLRA claim should be dismissed because the statute does not apply to residential lease agreements.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . intended to result or that result[] in the sale or lease of **goods or services**." Cal. Civ. Code § 1770 (emphasis supplied). The Act defines "Goods" as:

> tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property.

Cal. Civ. Code § 1761(a). "Services" means "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b). The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

Courts have routinely held that "[a]n apartment is real property, not a tangible chattel," and thus not a "good" as defined by the CLRA. *Cornu v. Norton Cmty. Apartments, L.P.*, 2009 WL 1961013, *6 (Cal. Ct. App. July 9, 2009); *see also Camp v. Ohana Mil. Communities, LLC*, 2024 WL 3594742 (D. Haw. July 30, 2024) (holding that a residential lease is not a lease of "goods" under Haw. Rev. Stat. § 480-2, Hawaii's equivalent of the CLRA); *State ex rel. Morrisey v. Copper Beech Townhome Communities Twenty-Six, LLC*, 239 W.Va. 741, 747–48 (2017) ("Clearly, a residential lease of real property made between a landlord and a tenant is not 'a lease of goods.'").

1    Plaintiffs respond that they have standing under the CLRA because their CLRA claim
2 challenges standalone "services" fees for the services provided under the lease, and not the
3 residential lease as a whole. Courts have explicitly warned, however, against "[u]sing the existence
4 of [] ancillary services to bring intangible goods within the coverage of the Consumers Legal
5 Remedies Act," because doing so would "defeat the apparent legislative intent in limiting the
6 definition of 'goods' to include only 'tangible chattels.'" *Fairbanks v. Superior Ct*., 46 Cal.4th 56,
7 65 (2009); *see also Consumer Sols. REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1016–17 (N.D. Cal.
8 2009) (agreeing with *Fairbanks* that ancillary services are not sufficient to bring a loan within reach
9 of the CLRA).[3]

10    Therefore, the Court **GRANTS** defendant's motion to dismiss plaintiffs' CLRA claim
11 **WITHOUT LEAVE TO AMEND** because no amendment of the pleadings can cure the foregoing
12 deficiencies.

### 3.    *Fraud-Based Claims (FAL, UCL "Fraudulent", & UCL "Unfair")*

14    Plaintiffs allege defendant violated the CLRA, FAL, and UCL by (i) affirmatively
15 misrepresenting the total cost of rent and (ii) fraudulently omitting the Disputed Fees.[4] "To allege a
16 violation of the three statutes based on a fraudulent misrepresentation or omission, a plaintiff must
17 plead (1) misrepresentation or omission, (2) reliance, and (3) damages." *Hammerling v. Google*
18 *LLC*, 615 F.Supp.3d 1069 (N.D. Cal. 2022) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal.App.4th
19 310, 326 (2011) and *Mirkin v. Wasserman*, 5 Cal.App.4th 1082, 1091 (1993)).

   a)    Plaintiffs' Affirmative Misrepresentation Theory

21    Plaintiffs challenging an affirmative statement as misleading under the CLRA, FAL, or UCL
22 must plausibly allege either that the statement is false, or that it would deceive or mislead a
23 "reasonable consumer." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016). "[T]he reasonable

---

[3] The parties also dispute whether *Ting v. AT&T* precludes plaintiffs' claim. *See* 319 F.3d 1126, 1148 (9th Cir. 2003). That case interprets a different type of agreement, and is not necessary to resolve here, so the Court declines to apply it to plaintiffs' claims at this juncture.

[4] Plaintiffs also allege that defendant's imposition of the Disputed Fees is in itself "unfair" under the UCL. It is unclear whether plaintiffs base this theory on their implied warranty of habitability argument (as summarized below) or some other allegation. Regardless, defendant does not move to dismiss plaintiffs' "unfair" claim on this ground.

consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 507–08 (Cal. Ct. App. 2003)). When applying the reasonable consumer standard, courts must be mindful that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012).

Defendant argues that plaintiffs' claims fail under *Davis.* That case is distinguishable. In *Davis*, the Ninth Circuit upheld dismissal of plaintiff's FAL and UCL claims where defendant allegedly deceived plaintiff into paying annual fees on a credit card. *Davis*, 691 F.3d at 1171. The court noted that an advertisement's "promise of reward certificates" cannot plausibly mislead a "rational consumer [into believing] that any credit card that offers rewards for spending must therefore not have associated costs of ownership." *Id.* at 1162.

Unlike *Davis*, here, the issue of reasonableness is a question of fact, not plausibility. Plaintiffs allege that they applied for defendant's property "based on seeing Defendant's advertised pricing online," and that the additional Disputed Fees were only disclosed by defendant after plaintiffs paid a non-refundable application fee. (*Id.* ¶¶ 57, 63.) Defendant points to unauthenticated screenshots to argue that its website discloses the existence of additional monthly fees and "specifically indicates that the advertised prices are merely 'starting' prices." (Dkt. No. 25 at 12.) As discussed above, the factual argument is premature.  The Court declines to take judicial notice of defendant's own webpages, accepts plaintiffs' allegations as true, and finds it plausible that a reasonable consumer could believe defendant's advertised cost to be the full cost of rental.

Therefore, the Court **DENIES** defendant's motion to dismiss plaintiffs' UCL, FAL, and CLRA claims as to affirmative misrepresentations.

b) Plaintiffs' Fraudulent Omission Theory

To assert fraudulent omission under the UCL, FAL, and CLRA, "the omission must either (1) 'be contrary to a representation actually made by the defendant,' or (2) 'an omission of a fact the defendant was obliged to disclose.'" *Anderson v. Apple Inc.*, 500 F.Supp.3d 993, 1012 (N.D. Cal. 2020) (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018)).

9

Here, plaintiffs acknowledge that defendant *did* disclose the existence of the Disputed Fees in their lease agreements. (FAC ¶ 42.) Plaintiffs fail to allege a duty to disclose the Disputed Fees at any other point during the transaction. *See Kwon v. Banc of AmericaFunding 2005F Tr.*, 2015 WL 400565, *2 (N.D. Cal. Jan. 29, 2015) (granting dismissal where "plaintiff has not alleged that defendants had a legal duty to disclose the existence of any 'kickbacks' or 'referral fees'" in their mortgage loans).

As it is unclear whether amendment is futile, the Court **GRANTS** defendant's motion to dismiss plaintiffs' UCL and FAL claims as to fraudulent omission **WITH LEAVE TO AMEND**.[5]

### 4. The UCL "Unlawful" Claim

A UCL "unlawful" claim rises or falls with its underlying violations. *See In re Dynamic Random Access Memory Indirect Purchaser Litig.*, 2020 WL 8459279, *11 (N.D. Cal. Nov. 24, 2020), *aff'd sub nom*, *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42 (9th Cir. 2022) (dismissing UCL "unlawful" claim "for lack of a predicate violation of a separate statute or common law regime").

Defendant's alleged FAL and CLRA violations form the sole bases of plaintiffs' UCL "unlawful" claim, and plaintiffs plausibly plead a misrepresentation theory under the FAL. Thus, Court **DENIES** defendant's motion to dismiss plaintiffs' claim of "unlawful" conduct under the UCL.

### B. Common Law Claims

Next, defendant moves to dismiss plaintiffs' common law claims, including for breach of implied covenant of good faith and fair dealing, and unjust enrichment.

///
///
///

---

[5] Plaintiffs unpersuasively argue that defendant has a duty to disclose the Disputed Fees pursuant to "the legislative purpose of the CLRA, FAL, and UCL." Dkt. No. 29 at 15. In doing so, plaintiffs specifically point to the FAL's purpose of "disseminating false and misleading statements of facts and omissions in its advertisement[s]" and the UCL's purpose of "promoting fair competition." *Id.* at 15–16. The Court has granted dismissal of plaintiffs' CLRA claim. Further, the Court rejects the circular argument that defendant is liable under the FAL and UCL because it had a duty to disclose omitted information under the FAL and UCL.

### *1.     Waiver & Voluntary Payment Doctrine*

Defendant argues that, because plaintiffs voluntarily paid the Disputed Fees and accepted the corresponding benefits, plaintiffs' common law claims are both waived and barred under the voluntary payment doctrine. Again, these are fact based and premature.

"Waiver is the intentional relinquishment of a known right after full knowledge of the facts." *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden, LLC*, 2015 WL 6082028, *3 (N.D. Cal. Oct. 15, 2015) (citing *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal.App.4th 666, 678 (2000)). Courts may infer an intent to waive from a party's "[a]cceptance of benefits under a lease." *Gould v. Corinthian Colleges, Inc.*, 192 Cal.App.4th 1176, 1179 (2011). "[W]aiver is normally a question of fact for the jury." *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden, LLC,* 2015 WL 6082028, at *3 (citing *Black v. Arnold Best Co.*, 124 Cal.App.2d 378, 384–85 (1954)).

Similarly, under the voluntary payment doctrine, "[p]ayments voluntarily made, with knowledge of the facts, cannot be recovered." *Steinman v. Malamed*, 185 Cal.App.4th 1550, 1557 (2010). Payments enforced by duress and coercion are not voluntary. *Id.* (internal citations omitted). "Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when . . . the defense raises no disputed issues of fact." *Rabin v. Google LLC*, 725 F.Supp.3d 1028, 1030 (N.D. Cal. 2024) (quoting *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)) (alterations in original).

With regards to waiver, plaintiffs do not allege that they knew what the Disputed Fees covered prior to the filing of this lawsuit. Thus, it is plausible that plaintiffs paid the Disputed Fees without full knowledge of the facts.

With regards to the voluntary payment doctrine, plaintiffs allege that "tenants like Plaintiffs have no choice but to either pay these fees or break their lease, be subject to additional fees imposed by these companies, and be left without a place to live." (FAC ¶ 28.) Plaintiffs' lease agreements also state that a "Resident's performance as a tenant of [the] property may be reported to credit reporting agencies." (RJN, Ex. I at 16; Ex. J at 16.) These allegations are sufficient to plead that plaintiffs' payments were involuntary.

The Court thus cannot conclude, as a matter of law, that waiver and the voluntary payment doctrine applies. *See Carbajal v. HSBC Bank U.S.A., N.A.*, 2017 WL 7806585, *11 (C.D. Cal. Apr. 20, 2017) ("Because the dispute over Plaintiff's knowledge at the time of wavier raises a dispute of fact, the Court cannot grant Defendants' motion to dismiss on the waiver issue."); *see also Munguia-Brown v. Equity Residential*, 2021 WL 4951460, *2 (N.D. Cal. Oct. 25, 2021) ("[T]he voluntary payment doctrine requires further adjudication of factual disputes as well regarding Plaintiffs' full knowledge of the facts and whether the payments of the late fees was voluntary or involuntary.") (internal citations omitted).

For the foregoing reasons, the Court **DENIES** defendant's motion to dismiss plaintiffs' common law claims on the bases of waiver and voluntary payment.

### 2.     *The Implied Covenant of Good Faith and Fair Dealing Claim*

Defendant next argues that plaintiffs' breach of implied covenant of good faith and fair dealing claim contradicts the express terms of the parties' lease agreements, and thus must be dismissed.[6]

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1369 (2010). The implied covenant supplements "the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Avidity Partners, LLC v. State*, 221 Cal.App.4th 1180, 1204 (2013) (internal citations omitted). Accordingly, "if defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 56 (Cal. Ct. App. 2002) (internal citations omitted).

Plaintiffs raise two arguments to the contrary. Plaintiffs first argue that defendant covenanted it would charge plaintiffs at "the advertised rental cost." (Dkt. No. 29 at 18.) Here, the alleged

---

[6] Plaintiffs' assert breach of contract and implied covenant of good faith and fair dealing as one cause of action. Defendant concedes plaintiffs' breach of contract claim, so it survives.

12

covenant would alter the express terms of the parties' contracts. *Daly v. United Healthcare Ins. Co.*, 2010 WL 4510911, *6 (N.D. Cal. Nov. 1, 2010) ("It is well settled that where a discretionary right in a contract in unambiguous, a party may not invoke the implied covenant of good faith and fair dealing.") (citing *Carma Developers, Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 374 (1992)). Plaintiffs' lease agreements explicitly permit defendant to charge beyond the base rental price for "additional utilities and services," including "Trash" and "a monthly service charge." (RJN, Ex. I at 41 & 44–45; Ex. J at 41 & 44–45.) Plaintiffs' grievance cannot be pursued under this theory.

Plaintiffs next suggest that, because California's implied warranty of habitability obligates landlords to provide habitable living spaces, and the services associated with the Disputed Fees are "basic necessities for habitable living," defendant covenanted it would provide those services for free. (Dkt. No. 29 at 18 (citing FAC ¶ 5).) Plaintiffs provide no authority for their claim that landlords cannot charge fees for services related to habitability, and the Court declines to adopt plaintiffs' expansive theory. The implied warranty of habitability requires landlords to "maintain . . . 'bare living requirements.'" *Conway v. Northfield Ins. Co.*, 399 F.Supp.3d 950, 966 (N.D. Cal. 2019) (citing *Green v. Superior Court of San Francisco*, 10 Cal. 3d 616, 637 (1974)). Plaintiffs have not plead facts that defendant failed to do so. This theory fails on this complaint.

For the foregoing reasons, the Court **GRANTS** defendant's motion to dismiss plaintiffs' breach of implied covenant of good faith and fair dealing claim.

The Court does not conceive of a possible amendment of this claim. However, out of an abundance of caution, the Court grants **LEAVE TO AMEND** but reminds counsel that it may only do so if such amendment can be done consistent with counsel's obligations under Federal Rule of Civil Procedure 11.

### 3.    *The Claim for Unjust Enrichment*

"Unjust enrichment is a theory of recovery in quasi-contract, in which a plaintiff contends the defendants received a benefit to which they were not entitled. To state a claim for unjust enrichment, plaintiff must allege receipt of a benefit and unjust retention of the benefit at the expense of another." *Verde Media Corp. v. Levi*, 2015 WL 374934, at *8 (N.D. Cal. Jan. 28, 2015)

1  (citing *Paracor Fin, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)). "A
2  claim for unjust enrichment 'does not lie when an enforceable, binding agreement exists defining the
3  rights of the parties.'" *Id.* (quoting *Paracor Fin, Inc.*, 96 F.3d at 1167).

4      Defendant argues that, to proceed with a claim for unjust enrichment, plaintiffs "must deny
5  the existence of enforceable agreements in their quasi-contract claim or show that the agreement
6  does not govern the underlying subject matter." (Dkt. No. 25 at 15.) (quoting *Etminan v. Alphatec*
7  *Spine, Inc.*, 2024 WL 3941832, *3 (S.D. Cal. Aug. 23, 2024)).

8      This Court and others in this district have held that, in the "early stage of the case, plaintiff
9  may plead in the alternative and 'assert claims based on both the existence and the absence of a
10 binding agreement between the parties.'" *Id.* (quoting *Parino v. BidRack, Inc.*, 838 F.Supp.2d 900,
11 908 (N.D. Cal. 2011)); *see also Rejoice! Coffee Co., LLC. v. Hartford Fin. Servs. Grp., Inc.*, 2021
12 WL 5879118, *10 (N.D. Cal. Dec. 9, 2021). Plaintiffs need not allege more, especially where, "in
13 light of the liberal pleading policy embodied in Rule 8(d)(2), the Ninth Circuit has held that at the
14 initial pleading [stage,] a pleading should not be construed as an admission against another
15 alternative or inconsistent pleading in the same case." *Id.* (internal quotation marks and citations
16 omitted); *see also Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985).

17     Defendant also argues that plaintiffs fail to allege the claim's substantive elements, including
18 how defendant was unjustly enriched, and by what wrongful conduct.

19     Defendant is mistaken. Plaintiffs allege that "Defendant was [] unjustly enriched at the
20 expense of Plaintiffs and members of the Class and Subclass by collecting application fees based on
21 its misleading and untruthful advertised rental prices and intentional hiding of the Disputed Fees."
22 (FAC ¶ 104.) The Ninth Circuit has found similar allegations sufficient to state a claim for unjust
23 enrichment. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (allowing a
24 claim for unjust enrichment to proceed based on the "straightforward statement" that defendant
25 "entic[ed] plaintiffs to purchase their products through 'false and misleading' labeling, and that
26 [defendant] was 'unjustly enriched' as a result").

27     Moreover, when claims for unjust enrichment "are based on the same conduct on related
28 statutory claims, these claims rise and fall together." *In re Plum Baby Food Litig.*, 2024 WL

14

1354447, at *4 (N.D. Cal. Mar. 28, 2024). Here, plaintiffs' claims for unjust enrichment are based on the same allegations of fraudulent conduct buttressing their state law claims. Thus, the Court's finding that plaintiffs sufficiently allege wrongful conduct in the context of the FAL warrants the same finding in the context of unjust enrichment.

The Court thus **DENIES** defendant's motion to dismiss plaintiffs' claim for unjust enrichment.

## V.  MOTION TO STRIKE

Defendant moves to strike plaintiffs' nationwide class allegations based on differences in states' implied covenant and unjust enrichment laws.[7] Defendant cites *Mazza v. American Honda Motor Co., Inc.*, where the Ninth Circuit overruled the district court's decision to certify a nationwide class involving unjust enrichment claims, noting that the "elements necessary to establish a claim for unjust enrichment . . . vary materially from state to state." 666 F.3d 581, 591 (9th Cir. 2012). Courts, however, have "consistently declined to apply *Mazza* at the motion to dismiss stage to strike nationwide class allegations." *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016). Nor is there a blanket rule that nationwide classes for unjust enrichment claims are inherently "uncertifiable." *Forcellati v. Hyland's, Inc.*, 876 F.Supp. 2d 1155, 1159 (C.D. Cal. 2012).

Courts have similarly declined to strike nationwide class allegations where they concern a breach of implied covenant of good faith and fair dealing claim. *See Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, *19 (N.D. Cal. June 13, 2014) (certifying multi-state class for breach of implied covenant of good faith and fair dealing claim).[8]

---

[7] Defendant also argues that plaintiffs cannot certify a nationwide class based on state law claims. Defendant misreads the FAC, however. Plaintiffs assert only their common law claims on behalf of a nationwide class.

[8] Defendant also argues that nationwide class certification would "impose significant manageability concerns due to the need to evaluate the specifics of each lease." Dkt. No. 25 at 18. Plaintiffs allege that "Essex uses the same form lease at the properties it manages nationwide." (FAC ¶ 17.) At this juncture, the Court must accept plaintiffs' factual allegations as true. *See Interpipe Contracting, Inc.*, 898 F.3d at 886–87.

In short, defendant's arguments are premature. The Court **DENIES** defendant's motion to strike plaintiffs' requests for nationwide class certification.

## VI. CONCLUSION

For the foregoing reasons, the Court makes the following rulings:

(1) Defendant's request for judicial notice or incorporation by reference of Exhibits A, B, and I through N is **GRANTED**.

(2) Defendant's request for judicial notice of Exhibits C through H is **DENIED**.

(3) Defendant's motion to dismiss plaintiffs' first cause of action (breach of implied covenant of good faith and fair dealing) is **GRANTED WITHOUT PREJUDICE** and may be amended consistent with Rule 11.

(4) Defendant's motion to dismiss plaintiffs' second cause of action (unjust enrichment) is **DENIED**.

(5) Defendant's motion to dismiss plaintiffs' third cause of action (CLRA) is **GRANTED WITH PREJUDICE** as outside the scope of the statute.

(6) Defendant's motion to dismiss plaintiffs' fourth (FAL) and fifth (UCL) causes of action as to affirmative misrepresentations is **DENIED**.

(7) Defendant's motion to dismiss plaintiffs' fourth (FAL) and fifth (UCL) causes of action as to fraudulent omissions is **GRANTED WITHOUT PREJUDICE** for failure to allege a duty to disclose the Disputed Fees.

(8) Defendant's request to strike plaintiffs' nationwide class allegations is **DENIED**.

Within fourteen (14) days of the date of this Order, plaintiffs may either file (i) an amended complaint, if any, remedying the claims dismissed in this Order or (ii) a notice indicating that they are proceeding solely upon the grounds as reflected in this Order. Defendant shall respond within fourteen (14) days of plaintiffs' filing. Further, plaintiffs shall comply with the Court's Standing Order ¶ 13. Parties shall not renew arguments already made and resolved in this Order. Nor may defendant assert new arguments that could have been asserted in the first instance.

A case management conference is hereby scheduled for June 30, 2025, at 2:00 p.m. via videoconference.

This terminates Docket Nos. 25 and 26.

**IT IS SO ORDERED**.

Date: April 14, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**